## DISTRICT OF COLUMBIA *v.* ROBINSON.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 86. Argued November 7, 8, 1900.—Decided January 7, 1901.

The testator of the defendants in error commenced in his lifetime an action against the District of Columbia for trespasses on land of his in the District. The alleged trespasses consisted in entering on the land and digging up and removing, under claim of right, a quantity of gravel to be used for repairing and constructing public highways. The testator died before the action was brought to trial. His executors brought it to trial and secured a verdict and judgment in their behalf, which was sustained by the Court of Appeals of the District. The issues involved are stated fully by the court in its opinion here, on which statement it is *held:*

(1) That as there was no evidence of a formal grant, and as the District relied upon an alleged dedication of the trust to the uses to which the District put it, the issue was properly submitted to the jury;

(2) That the Court did not err in holding and instructing the jury that the use of the tract by the public must have been adverse to the owner of the fee;

(3) That there was no error in holding and instructing the jury that the prescriptive right of highway was confined to the width as actually and without any intermission used for the period of twenty years;

(4) That there was no error in so instructing the jury as to deprive the District of a legal presumption that the public acts required to be performed by it in order to give the right claimed had been performed;

(5) That there was no error in leaving to the jury the question whether

the District of Columbia had done the acts constituting the tres-
pass, without the execution of its lawful powers according to law;

(6) That there was no error in submitting to the jury the question whether
the gravel was obtained incident to the lawful exercise of the power
to grade;

(7) That there was no error in sustaining the twelfth prayer of the de-
fendants in error, and thereby submitting to the jury to find and
determine both the law and facts of the case; and also thereby hold-
ing that if the jury found any one of the facts enumerated in said
prayer without regard to its probative force, it would tend to prove
that Harewood road was not a public way, and rebut any presump-
tion that it was a public highway;

(8) That there was no error in refusing the twenty-third prayer of the
District;

(9) That the Court properly instructed the jury that they might enhance
the damages that would make the claimants whole, by any sum not
greater than the interest on such account from the time of the fil-
ing of the original declaration.

THE case is stated in the opinion of the court.

*Mr. Andrew B. Duvall* for plaintiff in error. *Mr. Clarence
A. Brandenburg* was on his brief.

*Mr. Conway Robinson* and *Mr. Walter D. Davidge* for de-
fendants in error. *Mr. Leigh Robinson* and *Mr. Conway Rob-
inson, Jr.,* were on their brief.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is an action for damages which was brought by Conway
Robinson against the District of Columbia, for certain alleged
trespasses on his land called the "Vineyard." The trespasses
consisted in breaking and entering his close and digging a trench
386 feet long, 33 feet wide and 14 feet deep, and carrying away
4683 cubic yards of gravel. The grounds of action were pre-
sented in several counts. The District pleaded the general is-
sue and the statute of limitations. The plaintiff joined issue
on the first plea, and demurred to the second. No disposition
was made of the demurrer until February 18, 1884, when the
death of the plaintiff was suggested.

On the 29th of October, 1886, the defendants in error, execu-

tors of Conway Robinson, filed an amended declaration, presenting the cause of action in three counts. The first alleged the taking of the gravel from Harewood road; the second, its taking and using upon other roads; the third, the breaking and entering the close; the fourth, the breaking and entering the close, and the excavation of a trench, thereby separating parts of the close from other parts and impairing its value as suburban property.

On December 30, 1896, the District pleaded the general issue to the amended declaration. Issue was joined on the plea. Subsequently, by leave of the court, the District filed additional pleas. First, the statute of limitations of three years; second, *liberum tenementum*; third, that the trespasses complained of consisted in the excavation and removal of gravel and soil from within the lines of a public highway known as Harewood road. Upon motion the first plea was stricken out and a demurrer was sustained to the second. The case was tried on the general issue and the third plea.

A verdict was rendered for the plaintiffs (defendants in error) in the sum of $8000, and a judgment was duly entered thereon. It was affirmed by the Court of Appeals, 14 D. C. App. 512, and the case was then brought here.

The errors assigned are on exceptions taken to the giving, refusing and modifying instructions. It is not necessary to detail the testimony. It is enough to say that it tended to support the issues made by the parties respectively, and to support the claim that Harewood road was a public highway. For the latter the District relied upon prescription and dedication arising from twenty years' use by the public, and also upon the action of the levy court in relation to the road.

For the statutes in regard to the levy court and its functions we may quote from the opinion of the Court of Appeals as follows:

"The law of Maryland in force at the time of the cession of the District declared that the county courts 'shall set down and ascertain in their records, once every year, what are the public roads of their respective counties.' Act 1704, ch. 21, sec. 3.

"The act of Congress, July 1, 1812, empowered the levy court to lay out public roads, condemn lands therefor, and so forth, and provided that when a road shall have been so established, marked and opened they shall return the courses, bounds and plat thereof to the clerk of the county to be by him recorded, and it shall thereafter be taken, held and adjudged to be a public road.   2 Stat. 771.

"Section 2 of the act of May 3, 1862, declares that all roads which have been used by the public for a period of twenty-five years or more as a highway, and have been recognized by the levy court as public county roads, and for the repairs of which the levy court has appropriated and expended money, shall be public highways whether they have been recorded or not.   Section 3 provides that within one year from its passage, the levy court shall cause the county surveyor to survey and plat all such roads and have the same recorded.   In making the survey he was required to follow as near as possible the boundaries heretofore used and known for the highway and to mark the same at all angles with stones or posts.   12 Stat. 383.   This time for surveying, platting and recording was extended three years by act of February 21, 1863, 12 Stat 658, and again for three years from July 1, 1865, by act of June 25, 1864.   13 Stat. 193.   The Revised Statutes of the District (A. D. 1874) also provide that all public roads which have been duly laid out, or declared and recorded as such, are public highways, Rev. Stat. D. C. sec. 246; and that every public highway shall be surveyed and platted and that a certificate of the survey and plat shall be recorded in the records kept for that purpose. Rev. Stat. D. C. sec. 248.

"The penalty provided for the obstruction of public roads, as reënacted in the Revised Statutes of June 22, 1874, is limited to such as have been used and recognized for twenty-five years prior to May 1, 1862, and which 'were thereafter duly surveyed, recorded and declared public highways according to law.'   Rev. Stat. D. C. sec. 269."

Whatever evidence is necessary to illustrate the instructions will be stated hereafter.

There is an assignment of error which in effect, though in

form an attack on instructions, questions the sufficiency of the evidence to justify any recovery, and which asserts that it was the duty of the court to have taken the case from the jury. In other words, it is claimed that the trial court should have decided, and not left to the jury to decide, that the road was a public highway. It is not clear upon what the contention is rested. Whether it is rested on the ground that the road was established by the levy court, or that evidence showed beyond reasonable dispute that the road had been acquired by adverse use, or had been dedicated by plaintiff's predecessors in the title. But the evidence did not establish either conclusion beyond reasonable dispute. Both conclusions were disputable and disputed, and whether they were or were not justifiable inferences from the evidence, which was conflicting, was for the jury to determine, not for the court, and the court properly declined to do so. What were within the functions of the court and what were within the functions of the jury are questions entirely aside from the distinction between public and private ways and the manner of acquiring either—whether by grants or by acts *in pais* establishing title by dedication or prescription, the propositions which counsel have learnedly argued.

There is no evidence of a formal grant. The dedication of the road or the prescriptive right of the public to it was sought to be proved by the acts of the owners of the land and certain uses by the public. There was opposing evidence or rather evidence of opposing tendency which could be claimed to show that the use by the public was in subordination to the title— was permissive, not adverse. The issue hence arising was properly submitted to the jury.

The other assignments of error are more specific and exhibit for review the legal propositions which were involved in the issues. These are that the court erred in the following particulars:

(1) In holding and so instructing the jury that the use of the road by the public must have been adverse to the owner of the fee.

(2) In holding and instructing the jury "that the prescriptive

right of highway is confined to the width as actually and without any intermission used for the period of twenty years."

(3) By depriving the District of the presumption that the public acts required to be performed were performed.

(4) By leaving to the jury a pure question of law, to wit, "whether the District of Columbia had done the acts constituting the trespass 'without the execution of its lawful powers according to law.'"

(5) By submitting to the jury a question of law, to wit, "whether the gravel was obtained incident to the lawful exercise of the power to grade."

(6) By "sustaining the granting of the twelfth prayer of the defendants in error and thereby submitting to the jury to find and determine both the law and the facts of the case; and also thereby holding that if the jury found any one of the facts enumerated in said prayer without regard to its probative force, it would tend to prove Harewood road was not a public way and rebut any presumption that it was a public highway."

(7) By refusing the twenty-third prayer of the District, "and thereby holding that the defendants in error were not bound by the answer of the Commissioners to the bill of discovery filed by the testator of the defendants in error respecting the *bona fides* of the action of said Commissioners in respect of the alteration of Harewood road and the purpose of such alteration."

(8) By instructing the jury that they "might enhance the damages that would make them whole by any sum not greater than the interest on such amount from the time of the filing of the original declaration."

1. The first proposition was presented by the following prayers requested by the District and modified by the court. The words in brackets were struck out by the court, those in italics were added:

"II. If the jury believe from the evidence that the place where the alleged trespasses were committed is part of the road called the 'Harewood road,' in the District of Columbia, and that the said road had been used and recognized as a public county road for a period of twenty-five years prior to May 3,

1862, *adverse to the plaintiff's testator and those under whom* *he claimed,* and that said road was, after said last-mentioned date and *prior to the 1st day of July, 1868,* surveyed and recorded in the records of the levy court as a public highway, then the [plaintiffs are not entitled to recover in this action, and the verdict should be for the defendant] *the* jury should find that the said roadway is a public highway of the width that it had actually been used prior to May 3, 1862.

" *The maps introduced by the defendants are not such surveys* *and records as the act of 1862 contemplated, but may be considered, together with all the other evidence in the case bearing upon* *that point, in determining whether such survey and record was* *made.*

"III. If the jury believe from the evidence that the place where the alleged trespasses were committed is part of the road called the 'Harewood road,' in the District of Columbia, and that said road was a public county road, generally used and recognized as such by the public for an uninterrupted period of more than twenty years prior to 1880, *and adversely to the* *plaintiff's testator and those under whom he claimed,* under the control of and kept up and repaired by the public authorities, and used by it publicly, openly and notoriously for all the purposes of a public highway, under a claim of right, then the jury may and ought to presume a grant of a right of way to the public over said road [and the plaintiffs are not entitled to recover in this action and the verdict should be for the defendant] *to the width it had been so used.*"

"V. [The rule of presumption is one of policy as well as of convenience, and is necessary for the peace and security of society and] if the jury believe from the evidence that the public used 'Harewood road' as a public highway, whenever it saw fit, without [asking] leave *of the owner* and without objection *from* *him,* this is adverse, and uninterrupted adverse enjoyment for twenty years constitutes a title which cannot afterwards be disputed. Such enjoyment, without evidence to explain how it began, is presumed to be in pursuance of a full and unqualified grant."

"XX. If the jury believe from the evidence that Harewood

road was on May 3, 1862, a road within the county of Washington, in the District of Columbia, which had been used by the public *adverse to the plaintiffs' testator and those under whom he claimed* for a period of twenty-five years or more as a highway, and had been recognized by the levy court of said county *prior to that date* as a public county road, and the said levy court had appropriated and expended money for the repairs of said Harewood road, then they are instructed that the said Harewood road was at the time of the alleged trespasses complained of a public highway, *of the width it had been used*, although the same may not have been recorded."

But for the criticism of counsel the modifications and additions made by the court might be considered as having done no more than to bring out more clearly the meaning of the prayers. The recognition and control of the road by the District and its use by the public under "a claim of right" (third prayer) or "without asking leave of the owner and without objection from him" (fifth prayer), seem equivalent to a declaration of adverse use. Counsel, however, now contend for a different meaning and a different principle of law. They contend first, as we understand, that use alone without regard to the consent of the owner of the fee or his attitude to the use constituted the road a highway (prayer 2), and required a grant of it to be presumed (prayers 3 and 5).

The contention is not justified. The use must be adverse to the owner of the fee. The rule is correctly stated in 2 Greenleaf on Evidence. The learned author, after defining prescription and the period of possession which constituted it, and explaining the modern practice which has introduced "a new kind of title, namely, the presumption of a grant, made and lost in modern times; which the jury are advised or directed to find, upon evidence of enjoyment for sufficient length of time," says, "in the United States grants have been very freely presumed, upon proof of an *adverse, exclusive and uninterrupted enjoyment for twenty years*." And after stating the quality of presumption which arises, he continues: "In order, however, that the enjoyment of an easement in another's land may be conclusive of the right, it must have been *adverse*, that is, un-

der a claim of title, with the knowledge and acquiesence of the owner of the land, and uninterrupted; and the *burden of proving* this is on the party claiming the easement. If he leaves it doubtful, whether the enjoyment was adverse, known to the owner, and uninterrupted, it is not conclusive in his favor." Secs. 538 and 539. Under a different rule licenses would grow into grants of the fee and permissive occupations of land become conveyances of it. "It would shock that sense of right," Chief Justice Marshall said in *Kirk* v. *Smith*, 9 Wheat. 286, "which must be felt equally by legislators and judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title."

2. This proposition arises on the following prayer given at the request of the plaintiff:

"The jury are instructed that the right to an easement of common and public highway acquired by a prescriptive use or long use of the road is confined to the lines and width of the road as actually used for and at the end of the period of twenty years, and does not extend to a greater width beyond the width of the road so actually used, and in this connection the jury are further instructed that the planting or placing of the boundary stones mentioned in the evidence, if the same occurred within twenty years before the acts complained of, which are in evidence, would not extend such easement *by prescription* beyond the lines and width of such actual use."

The same reason and principle applies to this as to the preceding proposition. Relying for right of way on use, the right could not extend beyond the use. Or, as it has been expressed, "if the right to the way depends solely upon user, then the width of the way and the extent of the servitude is measured by the character of the user, the easement cannot be broader than the user." 1 Elliott on Roads, page 136, and cases cited.

3. This proposition is based upon the modifications by the court of the twelfth prayer requested by the District. It was as follows:

"[The levy court of the District of Columbia was a corporation. Its duty, among other things, was to supervise and

keep in repair the public roads of the county of Washington, and to plat, record and mark with boundary stones such roads.]

"If the jury find from the evidence that boundary stones were placed along Harewood road and at the point of the alleged trespass by the surveyor of the levy court in 1865 or thereabouts, and that thereafter said levy court worked and kept said road in repair, then [in the absence of evidence to the contrary the presumption is that] *it is a question for the jury to determine whether* said levy court caused said road to be surveyed, platted and recorded as a public highway in accordance with the act of Congress [requiring the same to be done, and such presumption is not overcome by the fact that the record of the survey and plat of said road is lost or cannot be found], *and it will be competent for them to so find if all the evidence establishes the fact to their satisfaction, although no record of a survey and plat of said road has been given in evidence.*"

The objection to the action of the court is that the District was thereby deprived of the presumptions which attend and support the acts of public officers.

One of the defences made by the District was that the road had become a highway under and by virtue of the acts of Congress heretofore referred to. As a condition of this defence it was necessary to establish that the road had been surveyed, platted and recorded by the levy court, and it was the effect of the prayer which was requested that the performance of that duty would be presumed by the law from the fact that the road had been worked and kept in repair by the levy court. In other words, such surveying, platting and recording would be presumed because it was the duty of the levy court to have done them under the acts of Congress. Undoubtedly the law indulges presumptions of the performance of their duty by public officers and presumptions of the existence of circumstances which generally precede or accompany acts testified to and which are necessary to their validity, but such presumptions are in aid of the evidence. They are not independent of the evidence nor raised against it. The record shows that the plaintiffs' testimony tended to establish "that the road was never surveyed, platted or recorded as a public road, as required by

law." The testimony on the part of the District was that the secretary to the governor of the District in 1871 obtained from the former secretary of the levy court what were supposed to be all of the records of the court, and turned them over to the treasurer of the board of public works, and that those records may be among the old records of the District, but witness did not know; nor did he know what was among them, and had no distinct recollection of any map of the road. Another witness, who was road supervisor from 1869 to 1871, testified that he saw the map of Harewood road and other roads among the records of the old levy court of the District in its room in the city. He did not know, however, when the map was prepared or by whom; that it embraced several roads; it was a map of the District of Columbia and the roads in it. Another witness (William T. Richardson), a civil engineer, testified that under the direction of the Commissioners of the District he found records and maps of the levy court relating to Harewood road; that he found some maps, one made in 1873, in Governor Shepherd's time, and also a copy of the levy court map; that the maps and records were found in the vault of the old District building on First street; that he found no other maps or records relating to the levy court or Harewood road; that the map found was a copy of the original map showing the roads of the District signed by a president of the levy court and clerk; that the first map was in pen work, and was an original made in 1873 under authority of an act of the late legislative assembly of the District. There was another map professing to have been made in 1857 by Mr. Boscke, while he was an employé of the District. The accuracy of the Boscke map was testified to, and it and the other maps were put in evidence.

The evidence therefore showed what the levy court did as to surveying, platting and recording the road, and the effect of it could not be taken from the jury and a presumption substituted for it. Such presumption might have been given to the jury as an element of decision in connection with the evidence, and might have been so given by the court if asked.

The prayer was objectionable for another reason. It assumed that a record of the survey and plat of the road was

made and lost. This was a fact in issue, and could not be assumed. The court left the fact to be deduced from the evidence, telling the jury, however, that they could infer it, although there was no direct evidence of it.

4. The eighth prayer given at the request of the plaintiff was as follows:

" If the jury believe from the evidence that at the time of doing the acts complained, which are in evidence, there was a right of common and public highway in the defendant to a road of only about twenty-five feet or less in width over the land of the plaintiffs' testator, and that an excavation in excess of the defendant's right of highway and of about thirty-three feet in width was made by the defendant upon the land of plaintiffs' testator, and believe from the evidence that the defendant so exceeded its right of highway and excavated gravel on the land of the plaintiffs' testator, and removed and used the same beyond the limits of said land to repair or improve other public highways in the District of Columbia without making just compensation to the owner of the soil or having any condemnation proceedings *or exercising its lawful powers according to law*, then the jury are instructed that the defendant would be liable as a trespasser for so doing, and that the jury must find for the plaintiff and assess such damages as the evidence shows would make them whole."

The italics are ours, and they indicate the words upon which the District especially bases its objection. That objection is that a pure question of law was submitted to the jury. The objection is very general, and hardly attains to such specification of an error as can be noticed. However, we have examined the charge of the court, and think what was meant by the words objected to was sufficiently explained.

5. The eleventh prayer asked by the plaintiff was as follows:

" The burden of proof is upon the defendant to satisfy the jury that the gravel was obtained incident to the legal exercise of the power to grade. Such power to be lawful must have been exercised by the Commissioners jointly. It could not be exercised by any one of the said Commissioners, as the power could not in law be delegated. If the gravel obtained and used

was not the incident to the exercise of the power to grade, but was obtained without the lawful exercise of the power to grade, then the use of the said gravel, as well as the said excavation, was unlawful, and the defendant has not maintained its plea of justification.

"*If the evidence shows to the satisfaction of the jury that said grading or the removal of said gravel was done under the supervision of the officers and by the employés of said defendant, it will be competent for the jury to presume from this fact that it was authorized and directed by the joint action of the Commissioners of the defendant, unless there be evidence that satisfies them that the contrary is the fact.*"

It is objected that the prayer submitted to the jury a pure question of law, to wit, whether the gravel was taken as an incident to the legal exercise of the power to grade. But a definition accompanied the question. The jury was told that what was meant by the legal power to grade was a power exercised by the Commissioners jointly, and the court carefully added that such legal power could be presumed from the supervision of the grading by the officers and employés of the District. The prayer is not amenable to the objection made.

6. The twelfth prayer requested by defendants in error, and given by the trial court with the modifications expressed in italics, was as follows:

"If the jury believe from the evidence that there was a lane or road over the land of the plaintiffs' testator, yet if from the evidence the jury believe that travel over said lane or road originated for the accommodation of some prior owner or owners of that tract and the adjoining tract, or either of said tracts, and of those deriving title from or under such owner or owners of either or both of said tracts, and believe that said lane or road was never surveyed, platted or recorded as a public road or highway, as required by law, and believe that the various owners of said tract of land by mesne conveyances conveyed the same from one to the other, with covenants of warranty, without showing, mentioning or excepting any lane or road over the same, either in the body of any of these deeds or in plats annexed to any of them, and believe that the location of

said lane or road or part thereof over the land of the plaintiffs' testator was changed by Mr. John Agg, a prior owner of said land, for the reason that he wished it further from his house, and that he employed and paid the hands who made this change, and believe that from about 1843 to about the time of the conveyance of May 15, 1857, to the plaintiffs' testator gates were maintained across said lane or road by the owner or owners of said tract or their tenants, and that the gate posts of such gates continued to stand for some time after the gates themselves wore out or disappeared, and stood there until some time in 1861, after the late war had commenced, and believe that taxes were assessed by the public authorities upon and paid by the owners of said land or their tenants upon said tract of land, as a whole, including land within the limits of said lane or road, and believe that acts of ownership over the land within the limits of said lane or road were exercised by the plaintiffs' testator, and believe that said lane or road was not repaired by the public authorities until after the late civil war, or recognized by the public authorities as a public road until after the late civil war, or if the jury believe any of these facts, then the jury are instructed that these facts or any of them which the jury may believe would tend to prove that said lane or road was not a common or public highway, and would tend to rebut any presumption of its being a common or public highway, and any and all such facts, if believed by the jury, are to be considered in connection with the other evidence in the case, and if the jury upon the whole evidence believe that said lane or road was not such a highway at the time of the acts complained of which have been given in evidence, *and was not a highway by dedication,* then they should find the issue joined upon the defendant's third additional plea of highway in favor of the plaintiffs."

The objection that this prayer left to the jury to decide the law and the facts of the case is not justified, nor that it was held, that if any one of the enumerated facts was proved, the Harewood road was not a public way. The prayer summarized the facts in evidence but did not express an opinion as to their probative force, whether collectively or separately considered.

Each fact had some probative quality and value, and it was proper for the court to say so, "and that any and all such facts," as the court remarked, " if believed by the jury, were to be considered in connection with the other evidence in the case." And the court further said : " If the jury upon the whole evidence believe " [not upon any one fact believe] " that the said lane or road was not such highway at the time of the facts complained of and was not a highway by dedication," then they should find that the gravel was not removed from a public highway, which was the defence made in the third additional plea of the District.

7. The testator of defendants in error filed a bill for discovery in 1882 on the equity side of the Supreme Court of the District of Columbia against the District, its Commissioners, and two assistants of the Engineer Commissioner. The bill alleged that he intended to bring an action against the defendants in said bill for the trespasses which constitute the matter of the present controversy, and after stating with particularity the grounds of discovery submitted interrogatories to be answered by the defendants, as to the time the acts were done which were complained of as trespasses, by whom done, under whose superintendency, by whom paid and out of what fund the work was paid for, the amount of gravel or earth dug and where taken, if taken from the limits where dug, and if any books, accounts, documents or papers were kept recording or evidencing the facts. Certain of the defendants made answer under oath to the interrogatories. As to the probative force of the answers the District at the trial of the case at bar asked the court to instruct the jury as follows :

" The jury are instructed that the plaintiffs are bound by the answer of the Commissioners *and* the District of Columbia to the bill of complaint of their testator [No. 7959, equity, Supreme Court, District of Columbia] offered in evidence by them, and so far as said answer is responsive to the allegations of said bill it is the evidence of the plaintiffs themselves, and the jury are not at liberty to ignore it or find the facts otherwise than in said answer set forth."

The prayer was refused. Upon what ground, however, does

not appear. It might have been refused and could have been, even if it contained a correct declaration of law, on account of its general character. It is attempted here to be particularized. The specification of error is that the court, by refusing the prayer, held "that the defendants in error were not bound by the answer of the Commissioners to the bill of discovery filed by the testator of the defendants in error respecting the *bona fides* of the action of said Commissioners in respect of the alteration of Harewood road and the purpose of such alteration." Whether the trial court would have given the prayer if it had been limited to the good faith of the District Commissioners we cannot know. Presumably not, if it made their answer in the discovery suit conclusive proof, as claimed in the prayer which was refused. The greatest strength of proof attributable to an answer under oath in a suit in equity is that it cannot be overcome by a single witness unaccompanied by some corroborating circumstance. That it has even that strength in a common-law court we are not called upon to decide. It certainly has not conclusive strength. *Lyon* v. *Miller*, 6 Grattan, 427, 438, 439; 1 Pomeroy's Equity Jur. § 208. The prayer requested was therefore properly refused.

8. At the request of the plaintiff the court instructed the jury as follows:

"If the issues joined upon both of the defendant's pleas, which issues are submitted to the jury, are found by them in favor of the plaintiffs, then they are instructed that they may assess such damages in favor of the plaintiffs as they believe from the evidence would make the plaintiffs whole, and may [include] *enhance the damages by any sum not greater than the* interest on the amount from August 28, 1882, when this action was brought, to the time of this trial [as part of the plaintiffs' damages], if the jury [see fit to include such interest as damages, and may consider the time during which the plaintiffs and their testator were kept out of their money between those dates] *shall find from the evidence that such allowance would be reasonable and just.*"

The objection is to the interest. It is not claimed that in cases of tort interest may not be allowed in the discretion of

the jury. It is asserted that under the circumstances of the case the court should not have submitted the claim of interest to the jury. But it was the plaintiffs' right to have invoked the exercise of the discretion of the jury, and the circumstances of the case were to be considered by it in exercising such discretion, and presumably were considered.

9. One of the issues in the case was whether the gravel was taken as an incident to grading the road or for use on certain streets in the District. There was also an issue as to the width of the road and the right to take gravel outside of that width. Prayers were asked on those issues. The ninth prayer of the District was modified by the court and given as modified as follows (the additions of the court are in italics):

"[Unless] *If* the jury shall believe from the evidence that Harewood road at the point of the alleged trespass was a public highway, *and that the gravel was taken in pursuance of the power to grade and not for the sole purpose of obtaining gravel for use elsewhere,* then if they find for the plaintiffs in this case they are instructed that the measure of damages is the value to the plaintiff's testator of such gravel as is shown by the evidence to have been taken by the defendant from the plaintiffs' testator's land exterior to the lines of Harewood road, *and such damages, if any, to the residue of the land as was occasioned by the removal of the gravel exterior to the boundaries of the road.*"

The criticism of the court's action is that it allowed the jury to consider the motive of the District in grading the road. We think counsel misapprehended the purpose of the modifications of the prayer. It did not question the motives of the District authorities nor did it assume anything that was not within the issues of the case. The right to take gravel within the limits of the road which might be established by the evidence and in the exercise of grading was conceded. The right to take gravel outside the limits of the road or not for the purpose of grading it, was denied, and properly denied. It was an easement in the land, not the fee to the land, which the public acquired by the road and the measure of the easement was the width of the road. The right to grade and improve was incident to the easement, but the easement gave no other right in the soil

or to the soil. The right to remove soil from one part of a road to another part may be conceded. And it has been decided such right extends to other streets forming parts of the same system. Of this, however, we are not required to express an opinion, as it is not involved in the prayer.

Finding no error in the record,

*The judgment is affirmed.*

MR. JUSTICE GRAY took no part in the decision.