# OETTINGER *v.* DISTRICT OF COLUMBIA.

---

### DEDICATION; ESTOPPEL.

Where the owner of land agrees with an adjoining owner to dedicate a portion of it for use as a public street, and the latter records a plat showing such dedication, and the municipal authorities enter upon the part so dedicated and grade it, such dedication thereby becomes

irrevocable and the first owner is estopped to thereafter disclaim the dedication and resume exclusive adverse possession; *following* Lansburgh v. District of Columbia, 8 App. ப. ப. 10; District of Columbia v. Robinson, 14 id. 512; S. C., 180 U. S. 92.

No. 1016. Submitted May 22, 1901. De. ided June 4, 1901.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for an injunction and to remove an alleged cloud upon the title of certain real estate. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Padgett & Forrest* for the appellant.

*Mr. Andrew B. Duvall,* Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg,* Assistant Attorney, for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree dismissing the bill of Henry Oettinger, filed August 20, 1897, against the District of Columbia to enjoin it from interfering with the complainant in the use of certain property that is claimed by the defendant as a public street; and to remove a cloud upon the title raised by the record of a map including said property in Thirty-seventh street of the City of Washington.

It appears that Lot 291 was conveyed, on January 17, 1889, to complainant and William H. Manogue as tenants in common — three-fourths to complainant and one-fourth to Manogue. On December 4, 1896, Manogue conveyed his interest to complainant.

The plat referred to in the bill was filed for record by Frederick W. Huidekoper who was the owner of the land south of Lot 291. It shows the location of Lot 291 with the proposed extension of Thirty-seventh street and the new street extending west therefrom. It is here copied as shown in the record with the addition of letters designating certain parts that are referred to in the testimony.

The answer of the District set up a dedication of the triangle *a* by the owners, Oettinger and Manogue, by agreement with Frederick W. Huidekoper, and the acceptance of the same by work done in grading and improving the extension of Thirty-seventh street north.

The facts of dedication as alleged were supported by the testimony of said Huidekoper. He said that he owned the land south of Lot 291, and also certain land a short distance north of the same in and surrounding the proposed extension of Thirty-seventh street. In 1889 he opened, but without express dedication, Thirty-seventh street south of Lot 291. Whilst so engaged, he had frequent interviews with W. H. Manogue, who was a lawyer, looking to the extension of the street across the end of Lot 291 as shown in the plat. He finally agreed with Manogue that, in consideration of the dedication of triangle *a* of Lot 291, he would dedicate the street south, and also the proposed new street to its intersection with the line of 291, and convey to the owners of 291 the title to triangle *b*. The ground was surveyed and the said plat made in accordance therewith. This gave the other parties 38 feet additional front on Thirty-seventh street and a frontage of about 400 feet on the proposed new street, along which Manogue talked of building some small houses. Witness then publicly entered and removed the fence and an old stable on triangle *a* and did considerable work in grading the lot in 1890, 1891 and 1893. At the same time the other parties took possession of and fenced triangle *b*. Witness subsequently subscribed the plat expecting Manogue and his cotenant to do the same, and offered to make the deed to triangle *b,* a memorandum of which he sent to Manogue. In 1892 or 1893, the District authorities did some work in gravelling Thirty-seventh street and the same was afterwards (say after 1895) extended north across other lands, some of which were acquired by condemnation.

Before and at the time of the institution of the suit, the District was engaged in putting gutters across triangle *a* in the lines of Thirty-seventh street.

Manogue, as a witness for complainant, admitted having frequent conversations with Huidekoper, but denied coming to the agreement testified to by him. He also said that Oettinger refused to enter into the arrangement and always refused to dedicate the land.

Oettinger testified that he refused to dedicate the land and had never agreed to any arrangement and had not authorized his tenant, whose house stood near the line of the proposed dedication, to inclose the triangle *b*.

He showed by his tax receipts that he had paid taxes on the whole of Lot 291 without deduction of the part included in the street. He lived about half a mile from the spot and visited it three or four times a month.

Upon a lengthy cross-examination, he and Manogue were compelled to admit that they knew of the removal of the fence and house on triangle *a* and that work had been done thereon in grading and opening the street. No attempt was made to prevent the occupation of the street.

Huidekoper's statement of the understanding with Manogue, who claimed to represent all the interests in the land, is corroborated by certain letters written by him to Manogue under the following dates: December 9, 1892; March 22 and May 30, 1893. Both of the latter express the desire to close the matter by making the deeds of dedication and conveyance. No answers were made to these. Moreover, Huidekoper's action in entering upon the lands, making the plat, and expending considerable sums of money in grading the street, afford exceedingly strong support to his statement of the agreement with Manogue and his belief that the latter had been authorized to act for the complainant. In addition, he was active in procuring appropriations from Congress for the northern extension and improvement of Thirty-seventh street. Complainant knew that some negotiations were going on between Manogue and Huidekoper for the opening of the street, though he denies assenting to any arrangement. He knew, however, that his land had been entered upon, his stable and fence removed, and the street graded, and yet made no objection until long after the District authorities had accepted the supposed dedication by improving the street for travel. He was bound also to know that his tenant had fenced the Huidekoper land (triangle *b*) and made a garden and chicken yard of it. His first protest and claim for compensation were made in March, 1897.

In the meantime, it appears that the District had been compelled to pay for some land in the further extension of Thirty-seventh street. It was this, apparently, that roused the complainant to action, as will appear in the following extract from his deposition:

"Q. You knew they were going to open a street through your lot? A. No, sir.

"Q. Didn't you know they were opening up Thirty-seventh (37th) street through your lot? A. I knew they were widening Thirty-seventh (37th) street; yes, sir.

"Q. You didn't know anything about it until it was all done? A. I made my application also when I heard the other men had been paid.

"Q. You didn't claim anything until you heard the other men were paid? A. Yes, sir.

"Q. You thought that if there was any money going on around about it you ought to have some? A. Yes, sir."

Great stress is laid, on the argument on behalf of the complainant, upon the fact testified to by him and Manogue that there had been no direct communication between him and Huidekoper, and that when Manogue reported propositions of Huidekoper he had always expressed his dissent to Manogue. The question of dedication, however, does not turn upon what he now says was his secret intention at the time; but upon the intention disclosed to Huidekoper and the public authorities by his conduct at the time. *Morgan* v. *Railroad Co.*, 96 U. S. 716, 723.

The rules of law governing the dedication and acceptance of private property for permanent use as a public highway or street, and the estoppel thereby raised against the owner's subsequent disclaimer and resumption of exclusive adverse possession, have been fully considered and reported in cases heretofore decided. *Lansburgh* v. *D. C.*, 8 App. D. C. 10; *D. C.* v. *Robinson*, 14 App. D. C. 512, 544; *S. C.*, 180 U. S. 92.

And there is nothing exceptional in the facts of this case that requires their restatement, or special explanation of their applicability.

Tested by those rules, we are of the opinion that the facts and circumstances proved are sufficient to constitute a dedication of the complainant's land to the public use as a street, that has become irrevocable through the acceptance shown by the acts of the public authorities. That no deed has been executed and delivered by Huidekoper conveying the title to triangle *b* in accordance with his proposition to Manogue, is immaterial. He has offered to do so and it is to be presumed that he will whenever complainant shall indicate his willingness to accept it.

Should he refuse, complainant, through his possession of the land and final performance of the agreement, will have ample remedy.

There was no error in the decree and it will be affirmed, with costs.   *Affirmed.*