**FAULKS et al. v. SCHRIDER et al.**
No. 7036.

United States Court of Appeals for the District of Columbia.

Argued May 9, 10, 1938.

Decided July 11, 1938.

Spencer Gordon, of Washington, D. C., for appellants.

Leon Pretzfelder, Leroy S. Bendheim, Francis M. Sullivan, Elwood Seal, Corp. Counsel, Vernon E. West, and Walter L. Fowler, Asst. Corporation Counsel, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, MILLER, Associate Justice, and PROCTOR, District Judge.

GRONER, C. J.

In 1936 the Commissioners of the District of Columbia commenced a proceeding in the court below to condemn land necessary for the extension of 8th Street, Jackson Street, and Kearney Street, in the City of Washington. The condemnation statute of the District of Columbia[1] provides that whenever property is taken for the opening of a street, benefits, so-called, shall be assessed against the neighboring property in an amount equal to the damages awarded for the land condemned, the result being that the cost of condemnation is borne by the landowners and not by the municipality. Appellants own lots which abut on the new streets, and the jury assessed about $5000 against their property as the benefit which it will enjoy. At the same time the jury awarded appellee about $5000 as damages for the property over which the new streets were to be laid—which property, of course, abuts on appellants' lots. By statute[2] assessed benefits are required to be paid into the Treasury and damages are paid from the Treasury. Appellants, claiming title to the condemned land, opposed the Commissioners' payment to appellee of the amount awarded as damages. Accordingly, the Commissioners deposited the money in the registry of the court[3] and left the parties to settle their dispute. The present controversy, therefore, does not involve the condemnation proceeding as such but involves only the opposing claims of the parties to the land condemned, with the consequent right to the damages awarded for its taking.

The undisputed facts are these: In 1893 Thomas Armat and John M. Comstock, as trustees, owned a large tract of land lying in the District of Columbia, which they divided into blocks, lots, and streets, under the name "West Brookland". A plat of the property was recorded by them in the office of the Recorder of Deeds as an exhibit to a deed conveying one of the lots. Thereafter in 1897 they conveyed to John M. Comstock certain of the subdivided lots described as follows: "all Block numbered (23) Twenty-three, containing 30,422-63/100 square feet, and also Lots Numbered (7) seven to 11 containing in the aggregate 15,838-91/100 square feet, all of said Lots and Blocks being in Thomas Armat and John M. Comstock Trustee's subdivision known as 'West Brookland', as per plat of said subdivision recorded in the Office of the Recorder of Deeds for the District of Columbia in Liber numbered 1848, at folio 496 et seq. one of the Land Records for the District of Columbia, together with all and singular the improvements, ways, easements, rights, privileges and appurtenances to the same belonging, or in anywise appertaining." The lots thus conveyed to Comstock were shown on the plat as abutting on 8th street, Keokuk Street (now Kearney) and Joliet Street (now Jackson); but the plat was never recorded in the surveyor's office

---

[1] T. 25, Sec. 51–71, D.C.Code 1929, id. Sec. 58 Supp. III.

[2] Title 25, Secs. 51, 66, 70, D.C.Code 1929.

[3] Title 25, Sec. 65, D.C.Code 1929.

as provided by statute[4], so that there was no dedication to the District of Columbia of the property shown as streets. It is this identical property, platted as streets, which has now been condemned for the purpose of opening such streets.

Appellants are the successors in title of John M. Comstock. Their contention in this suit is that the conveyance to Comstock of the lots and blocks described above carried with it the fee to the center of the abutting streets, and that, as successors in title of Comstock, they own to the center of the streets abutting their property, and to the full width of the streets where there was no land in the original subdivision abutting on the other side of the street.

In 1898 (the development probably having failed of its object) Armat and Comstock, trustees, conveyed to Baker and MaGuire, trustees, all the original tract of land except that portion conveyed to Comstock and that portion conveyed to three other persons. Appellee Schrider, trustee, is the successor in title of Baker and MaGuire, trustees, and as such claims title to the whole of the land which has been condemned. In other words, Schrider contends that no part of the property shown on the plat as streets became vested in fee in Comstock and that, at most, Comstock and his successors in title acquired an easement over the street. The property when subdivided was unimproved, and neither then nor afterwards were any streets actually cut through or improved.

From what has been said, it will be seen that the question is whether appellants' predecessors in title took the fee to the center of the streets and to the full width of the streets where the streets were shown on the edge of the plat with no land in the subdivision abutting on the other side, or whether they acquired only an easement over the streets. The court below sustained appellee Schrider's contention that appellants had only an easement, and, on the theory that this easement had not been impaired, awarded the entire sum of money to appellee.

In our opinion the decision is wrong. We have never had occasion to pass on this question but we think there can be no doubt that it is an established rule of the common law that a conveyance of land bordering on a road or street carries the title to the center of the road or street if the grantor owns that far, unless the terms or circumstances of the grant indicate a limitation of its extent by the exterior lines thereof or unless an intention to retain title to the street clearly appears from the conditions of the conveyance. Banks v. Ogden, 2 Wall. 57, 17 L.Ed. 818; Herbert v. Rainey, C.C., 54 F. 248; Paine v. Consumers', etc., Company, 6 Cir., 71 F. 626. In the last cited case Judge Taft said (page 629): "By the common-law rule of construction, a deed of land which describes it as bounding upon a street carries the fee of the grantor to the middle line of the street."

Judge Taft cites in support of the rule: Stark & Wales v. Coffin, 105 Mass. 328; Bissell v. R. R. Co., 23 N.Y. 61; Jarstadt v. Morgan, 48 Wis. 245, 248, 4 N.W. 27, and Paul v. Carver, 26 Pa. 223, 67 Am. Dec. 413, and says that in Stark & Wales v. Coffin, supra, it was held that a deed conveying part of a tract of land as bounded "by a passageway of fifteen feet wide" leading across the tract, with no restriction or controlling words, passes the fee to the center of the way so assumed as a monument, although no such way existed at the date of the deed, or has ever been fenced off, and, although the deed provided that the passageway was to be held in common forever by the parties to the deed. In Bissell v. R. R. Co., supra, the Court of Appeals of New York, he said, held that the conveyance of a lot bounded on a piece of ground laid out upon a map as a street and called a street, but which was not in fact a public street or highway, carried the grant to the middle of the street. Likewise in the Jarstadt Case, the owner of land laid out into blocks and lots bounded by what were represented on an unrecorded or defective plat as streets conveyed the lot by reference to the plat. Neither of the streets was ever opened and used by the public as a highway, though the full enjoyment of the lots sold required that the street should be opened for the full distance of the block. There it was held that, as against the grantor's assigns, the grantee took to the center of the street abutting on his lots. Paul v. Carver, supra, is to the same effect, as is also the great majority of state cases. Those involving application of the rule to cases where the deeds in question describe the land conveyed by lot or block number

---

[4] Title 25, Secs. 433, 452, D.C.Code 1929.

as shown on a plat, are included in the footnote.[5]

When appellants' predecessor purchased the lots in question, the streets upon which those lots abutted had not been opened and, in fact, were never opened. But we think this is immaterial in the operation of the rule. Trowbridge v. Ehrich, supra; Coppin v. Manson, supra. And we also think that the specification of the area to the lot conveyed is not of itself sufficient evidence of the grantors' intention to reserve to themselves title to the beds of the abutting streets, Geddes Coarse Salt Co. v. Niagara L. & O. P. Co., 207 N.Y. 500, 101 N.E. 456; Bergan v. Co-op., etc., Co., supra; Wiedmer v. W. J. & S. R. Co., supra. With this question to one side, there is nothing in the language of the deed we are concerned with here which tends to show the grantors' intent to retain title to the bed of the abutting streets. In its absence and in the absence of words which by necessary implication could be held to show such intention, we think we should hold that appellee had no title to the bed of the streets.

Second. It is insisted on behalf of appellee, however, that, even though the rule is as we have stated it, appellants and their predecessors in title have been guilty of such laches as to estop them from obtaining relief in a court of equity, and also that the evidence is legally sufficient to give appellee good title by adverse possession.

The trial court, in deciding the case, discussed the question of abandonment and laches and made a conclusion of law that, if appellants ever had any right to assert a claim of ownership in fee to the land in question, they were estopped and barred by reason of laches in not asserting it from 1898 until the present time. On the other hand, the court did not decide or hold that appellee had shown title by adverse possession, and in the lower court appellee clearly relied on his claim of record title and not on title by adverse possession. We think it cannot be contended that fee simple title to real property may be lost by abandonment, laches, or estoppel. Even an easement acquired by express grant cannot be so lost. Brunthaver v. Talty, 31 App.D.C. 134. Once title vests, it stays vested until it passes by grant, by descent, by adverse possession or by some operation of law such as escheat or forfeiture; but it is elementary that title does not pass by inaction on the part of the owner. In the present case, therefore, it is clear, we think, that if appellants got fee simple title to the land lying in the streets as shown by the plat,—as we hold they did,—then the only way they lost that title, if they lost it, was through appellee's adverse possession. The lower court made no findings upon which we could hold that appellee established title by adverse possession, and in view of the unsatisfactory state of the record in this respect and in view also of the theory upon which the parties proceeded at the trial, we think it better to reverse the judgment and remand the case for a new trial on the question whether appellee is entitled to the fund as against appellants on the ground that he acquired title to the property involved by adverse possession.

Reversed and remanded.

---

5 Johnson v. Grenell, 188 N.Y. 407, 81 N.E. 161, 13 L.R.A.,N.S., 551; Trowbridge v. Ehrich, 191 N.Y. 361, 84 N.E. 297; Bright v. Palmer, 47 S.W. 590, 20 Ky.Law Rep. 771; Coppin v. Manson, 144 Ky. 634, 139 S.W. 860; Dickinson v. Arkansas City Imp. Co., 77 Ark. 570, 92 S.W. 21, 113 Am.St.Rep. 170; Hamilton County v. Rape, 101 Tenn. 222, 47 S.W. 416; Bergan v. Co-op. I. & F. Co., 41 Ind.App. 647, 84 N.E. 833; Loud v. Brooks, 241 Mich. 452, 217 N.W. 34; Wiedmer v. W. J. & S. R. Co., 98 N.J.L. 316, 119 A. 776; Brill v. N. J. P. Co., 111 N.J.L. 224, 168 A. 461; Durbin v. Roanoke B. Co., 107 Va. 753, 60 S.E. 86. Occasionally an older case will be found expressing a contrary view (cf. Hanson v. Campbell's Lessee, 1863, 20 Md. 223.) but we are convinced the clear weight of authority is otherwise.