**Sidney S. ZLOTNICK and Renee Zlotnick Kraft, Plaintiffs,**

v.

**JACK I. BENDER & SONS, INC., Defendants.**

**Civ. A. No. 2638–65.**

United States District Court
District of Columbia.

May 16, 1968.

Jacob A. Stein, Glenn A. Mitchell, Washington, D. C., for plaintiffs.

Harold Gordon, Danzansky & Dickey, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This is an action for declaratory relief, injunction and damages. The respective rights of the parties in two connecting alleys in downtown Washington are involved. Plaintiffs contends that defendant has obstructed both alleys and prevented plaintiffs from exercising the rights which plaintiffs have as adjoining land owners and under a quitclaim deed

from defendant. The complaint was filed October 1965. Jurisdiction is based on 28 U.S.C. § 2201 and § 11–521 of the D.C.Code (1967).

Annexed to this Memorandum Opinion is a rough plat which has been sketched and which will aid in an understanding of the facts and issues.

The alleys shown were laid out under the following circumstances. In the year 1809 Samuel Davidson, then the owner of the property designated by Lots 1–9, cre-

ated an original and valid subdivision which was duly recorded.[1] By that subdivision Lots 1–9 were delineated and Alley A and Alley B were dedicated as private alleys, as the parties agree in their trial briefs, under the following language and reservations:

"I have subdivided the Lot No. 2 into the lots or parts numbered 1 to 5 and the Alley marked A. on the annexed plat of the Square. The Lots No. 9, and No. 10 of the original division into the Lots or parts No. 6 to 9 and the alley or way marked 'B' on the said plat. And I hereby declare that the alleys or ways marked 'A' and 'B' on said annexed plat are intended for the use and convenience of the holders or occupiers of the Lots or pieces so by me laid off and numbered from one to nine (1 to 9) inclusive. Reserving however to myself and my Heirs or Assigns the sole right of giving and granting to the holders or occupiers of Lots other than these above mentioned in said Square, the privilege or advantage of said alleys, as a way or roads to their said Lots." (Pl.Ex. 1).

Alley A is 10 feet wide and runs east from 18th Street for approximately 140 feet. It then extends in a northerly direction across the rear of Lots 8 and 9, diminishing to a width of 5½ feet at the point where it intersects the south line of Alley B. Alley B extends from the west side of Connecticut Avenue in a westerly direction. It is approximately 5.6 feet wide until the point where it widens out opposite the rear of Lot 814 where it has an approximate width of 8 feet.

Both plaintiffs and defendant at time of suit enjoyed the right to use Alley A as "holders or occupiers" of one or more of the numbered lots laid out in the original Davidson subdivision. As for Alley B, plaintiffs' rights in addition to their rights arising out of the subdivision are reinforced by a quitclaim deed running from defendant to plaintiffs. Since the meaning and effect of this deed are the principal bone of contention between the parties, it will be considered in some detail.

The proofs showed that on March 4, 1958, defendant executed a quitclaim deed in favor of plaintiffs. This quitclaim deed stated in pertinent part as follows (Pl.Ex. 5):

"WITNESSETH, that for and in consideration of the sum of Ten Dollars the said party of the first part, does grant and quit-claim unto the said parties of the second part, in fee simple as Joint Tenants, all right, title, interest and estate of any nature whatsoever, *that it may now own or may hereafter acquire in the hereinafter described property* as the owners of Lots 28, 808, 18, 809, 810, 811, 19, 8, 9, 10, and 11 in Square 161 the following described land and premises, with the improvements, easements and appurtenances thereunto belonging, situate in the District of Columbia, namely: Part of Square 161 being an Alley as shown and designated as Alley 'B' in Samuel Davidson's Subdivision of lots in said square 161, * * *." (Emphasis supplied.)

On March 4, 1958, defendant owned Lot 9 and Lots 1–5.[2] Plaintiffs owned Lots 6 and 7 as joint tenants. Thus the parties owned all of the lots designated by Samuel Davidson except Lot 8, and the quitclaim deed on its face purports to alienate any interest defendant may have or obtain in the alley by reason of its ownership of any lots in the Davidson subdivision.

---

1. Davidson subdivided Square 161 pursuant to an Act of January 12, 1809 signed by Thomas Jefferson, 2 Stat. 511 (1861). That Act provided that:
 "* * * the ways, alleys or passages, laid out or expressed on such plat of subdivision, shall be and remain to the public, *or subject to the uses de-* *clared by the person making such subdivision,* at all times under the same police regulations as the alleys laid off by the *commissioners on division with* the proprietors. (Emphasis supplied.)

2. Designated in the quitclaim deed as Lots 28, 808, 18, 809, 810, 811 and 19.

There was consideration for this quitclaim deed. The $10.00 specified in the deed as consideration was in fact paid. (Tr. 32). Moreover, the deed was executed in part in consideration for plaintiffs' withdrawing their written opposition to the closing of another alley of about 50 feet in length in the square which defendant's then-president, John I. Bender, considered important to his plans for the construction of a modern building on the land on the southeastern portion of the square where the Bender Building now stands. Whatever the merits of this objection, its withdrawal constituted consideration for it had, at the very least, a nuisance value. (Tr. 349–352.) Lot 8 was owned by a third party at the time the quitclaim deed was executed. Defendant had assured plaintiffs of his specific intention to acquire Lot 8. Defendant in fact did later acquire Lot 8 by August 13, 1964, before this action was instituted.

 Since defendant did not own Lot 8 as of the date of this quitclaim deed, however, it now argues, in spite of the language of the deed, that the doctrine of estoppel by deed does not apply and that by virtue of its subsequent acquisition of Lot 8 it has a continuing right to the "use and convenience" of Alley B. The quitclaim deed will, however, be upheld in its entirety for this contention is without merit. Great care must be taken in permitting a quitclaim deed to run against future acquired property. It appears to the Court that in this instance there is no reason not to take a liberal view of the effect of the deed under the circumstances shown by the record. The grantor, a knowledgeable contractor, received substantial benefit from the deed. It is also undisputed that it was the intention of the parties

prior to execution of the quitclaim deed (Tr. 29) as well as stated in clear and unambiguous language in the deed itself. The modern trend of the cases and the common sense of this situation require that the quitclaim deed be upheld. To do otherwise would be to countenance a complete disregard for the basic elements of contract which lie at the heart of real estate transactions. The thrust of cases in this jurisdiction points up the great significance of the intention of the parties in construing any deed. Morris v. Wheat, 8 App.D.C. 379 (1896); see also, Williams v. Paine, 169 U.S. 55, 18 S.Ct. 279, 42 L.Ed. 658 (1897). No District of Columbia case directly in point has been found but the reasoning of the following cases from other jurisdictions is in point and is accepted, particularly in the light of D.C.Code § 45–101 (1967). Thornton v. Louch, 297 Ill. 204, 130 N.E. 467 (1921); In re Wilson's Estate, 40 Cal.App.2d 229, 104 P.2d 716 (1940); Williams v. Reid, 37 S.W.2d 537 (Mo.1931); 144 A.L.R. 561.

The quitclaim deed, by its terms, conveyed to plaintiffs "any interest whatsoever" which defendant has in Alley B as a result of its ownership of the lots specified in the deed. In an effort to defeat the effect of the quitclaim deed, defendant also argues that defendant may still use Alley B because title to that alley is actually in the District of Columbia and because members of the public and persons working in buildings in Lots 812–814, which defendant now owns, have rights to the alley by prescription.

██ The District of Columbia was not a party to this proceeding and at the outset of the trial the Court declined to rule that it was an indispensable or necessary party.[3] Lumbermen's Mut.

---

3. It was also argued at the trial that the heirs of Samuel Davidson were indispensable or necessary parties because they are the true title owners of the alleys. The Court ruled to the contrary and no facts at trial appeared to cause a reconsideration of this issue. Defendant claimed no separate easement rights from the heirs and the reservation in them that may exist under the subdivision dedication has apparently not been exercised. The contention that the heirs retain the fee title to the alleys appears weak in light of the language of the instrument and the authority of Faulks v. Schrider, 69 App.D.C. 137, 99 F.2d 370

Cas. Co. v. Elbert, 348 U.S. 48 at 52, 75 S.Ct. 151, 99 L.Ed. 59 (1954). In the absence of the District, however, the defendant was permitted to present proof to support its contention that the alleys in question are in fact owned by the District, from which premise defendant hoped to be able to argue that its quitclaim deed affecting Alley B was a nullity. A number of representatives of the District were called to testify and documents from the files of the District were received in evidence. While any determination here made is naturally not binding on the District, the Court concludes on the basis of the record before it that the alleys are still private alleys and that defendant did not carry its burden of proof in seeking to demonstrate that the District had taken title to either alley by adverse possession prior to the time the quitclaim deed was executed or at any subsequent date.

In reaching this conclusion the Court has taken into account that the District Surveyor has not shown the alleys as public on any plat, which would be the general practice if such were the case; that a District official advised defendant in late 1965 that the Surveyor's office records did not show the alley to be public but in effect private; that the District does not maintain and clean alleys; that defendant withdrew an application to have the alleys declared public as preliminary to their being closed; and that there was not even a suggestion from the testimony of various officials of the District that the District has ever claimed or contemplates claiming either a prescriptive easement or title. (Tr. 126–130, 152–159, 214–226; Def.Ex. 38). While the status of alleys in the District of Columbia is often confused and in doubt and there was some conflicting evidence in this case, defendant did not meet its burden.

Defendant further argues that it has acquired an easement by prescription in Alley B by virtue of the use made of the alley by employees of defendant's tenant and employees of the tenants of defendant's predecessor in title in connection with the use and occupation of Lots 812, 813 and 814 where the Daly and Logan Buildings are located.

■■■ The Restatement of Property, Section 457, states that:

"An easement is created by such use of land, for the period of prescription, as would be privileged if an easement existed, provided the use is (1) adverse, and (2) for the period of prescription, continuous and uninterrupted."

The statutory period of prescription in the District of Columbia is 15 years. D. C.Code § 12–301 (1967). Since the defendant has had title to Lots 812–814 only since 1963, defendant argues that it has acquired this easement by tacking its use to the usage of its predecessors in title. But defendant has not shown use by its titular predecessors. As Umhau v. Bazzuro, 76 U.S.App.D.C. 394, 133 F.2d 356 (1942), makes clear, tacking is impossible without a showing of privity between users. 3 Powell, Real Property, § 413. Defendant has no privity with the employees of the tenants of the Daly or Logan Buildings. Occasional use by some of a tenant's employees, for personal rather than business purposes, cannot be imputed to the owner for no action for trespass would lie against the owner for the employees' personal acts. There was no privity of estate between successive tenants in this case and defendant did not purchase a user from the previous owners of Lots 812, 813, 814. Umhau v. Bazzuro, 76 U.S.App.D.C. at 396, 133 F.2d 356. Defendant does not presently possess a prescriptive easement in Alley B.

■■■ Defendant also claims a continued right to use Alley B as a member of the public. Defendant argues that the

(1938). The terms of the subdivision dedication will not be so construed; but even if the contrary be determined, the easements appurtenant held by plaintiffs from their ownership of Lots 6 and 7 and under defendant's quitclaim deed must be considered and any rights plaintiffs have vis-a-vis defendant protected.

public has acquired a prescriptive easement in the alley. Assuming, *arguendo*, that defendant is permitted to seek to exercise rights as a member of the public which it deeded away for valuable consideration in its capacity as landowners—and assuming that defendant adequately represents the public's interest in obtaining an easement by prescription—the Court still finds that the evidence does not support the conclusion that the alley was continually used by the general public for the prescriptive period of 15 years. In the last analysis this is a fact question. The proof directed to general public use was very general, indefinite and far from persuasive on an issue such as this. (Tr. 258, 324–325). District of Columbia v. Robinson, 180 U.S. 92, 99–100, 21 S.Ct. 283, 45 L.Ed. 440 (1901). Since the use was not proven to be continuous or to have involved general use rather than use by a few individuals, it cannot be given the presumption of adversity. Kogod v. Cogito, 91 U.S.App.D.C. 284, 286, 200 F.2d 743, 745 (1952); District of Columbia v. Robinson, 180 U.S. 92 at 100, 21 S.Ct. 283, 45 L.Ed. 440 (1901); see generally, 2 American Law of Property 483 (1952). Defendant has failed to sustain its burden of proof with respect to the degree and continuity of public use.

■ The respective rights of the parties before the Court are clear. Defendant has not shown that it has any rights in Alley B. Plaintiffs have at least an easement appurtenant in Alley B. Plaintiffs and defendant have had, and continue to have, equal rights in Alley A.

There is no doubt but that defendant has trespassed on Alley B and obstructed Alley A in a manner to seriously interfere with plaintiffs' rights and in open and complete disregard of plaintiffs' rights. As for Alley B, it appears that in late August or early September 1965 the defendant and its agents came upon Alley B in connection with the construction and improvements being performed on defendant's building on Lots 812–814 (Tr. 33–34). The acts performed in Alley B by defendant and its agents in connection with the construction work continued from September 1965 to January 1966 (Tr. 43). These acts consisted of, among other things, stacking work materials, building supplies, bricks, sand and waste matter, as well as obstructing passage due to the presence of workmen. (Tr. 34, 106, 356). In addition, defendant rehung two doors on a part of its building located on Lot 814 so that the doors swung outward over Alley B when in use. The frequency or conditions of such use were not shown and rights by adverse possession were not shown. (Tr. 36).

As for Alley A, the proofs disclosed that commencing about the same time and in connection with its extensive construction activities on Lots 812–814, defendant made a temporary excavation and piled building materials and debris on that portion of Alley A between Lots 812–814 and Lots 8 and 9 (Pl.Exs. 9–11; Tr. 45–46). These obstructions existed from August 1965 through January 1966 (Tr. 50). In addition, the defendant constructed a permanent concrete loading step off the building on Lot 812 onto Alley A, a condition which persisted at the time of trial (Pl.Exs. 15, 16; Tr. 52–53).

■ A more uncertain factual situation is presented by another aspect of the alley controversy. Defendant claims a right to maintain two airshafts—one opening on Alley A and the other on Alley B from defendant's property on 18th Street. These airshafts are covered by grills at ground level. They are shown in plans dated 1927 for the Daly Building. There was no proof that the airshafts were put in at that time, although a strong presumption to this effect exists. There was, however, no proof as to the consecutive period the shafts have actually been used and indeed for a period of two years prior to suit the airshaft in Alley B was covered and obviously not in use. An easement for an airshaft based on open and notorious hostile adverse possession and use for 15

years can be obtained. Defendant has not, however, met its burden as to the airshaft in Alley B. As to the airshaft in Alley A, there is no proof that this airshaft interferes with plaintiffs' enjoyment of their easement and no case or controversy between the parties is shown sufficient to warrant the Court's intervention. (Tr. 77–81, 105, 186–187).

All of the aforesaid acts and obstructions were accomplished by the defendant or its agents in connection with the defendant's ownership of, and improvements on, the building located on Lots 812–814 (Pl.Exs. 18, 19, 20, 31; Tr. 34–36, 114–117, 121, 353–354). Plaintiffs complained about the trespasses and obstructions on September 3, 1965, by a letter from their attorney (Pl.Ex. 17; Tr. 57). In late September 1965, Mr. Zlotnick met with defendant's attorney to object to the trespasses and obstructions on Alleys A and B, and to ask the defendant to discontinue this conduct. (Tr. 58–60). No agreement was reached whereby defendant would discontinue its activities on Alleys A and B. (Tr. 61, 62). Plaintiffs never gave permission to defendant or its agents to use Alley B or obstruct Alley A and never withdrew his opposition to defendant's activities (Tr. 63).

■ Declaratory judgment is appropriate to interpret the written instrument running between the parties and to resolve their legal relationship. While the trespasses have in some measure ceased, it is apparent that constant controversy between the parties will continue unless their legal positions are adjudicated. It is no answer to suggest as does the defendant that since a tenant of plaintiffs has been given some rights in Alley B plaintiffs' interest is purely reversionary and plaintiffs cannot now proceed. The complaint speaks as of the time it was filed and in any event the lease does not remove the conflict between the parties. There are justiciable adverse legal interests. Declaratory judgment is the obvious and proper remedy under the circumstances, for no single action at law could serve to resolve the many aspects of the existing and potential dispute.

These acts of the defendant are wholly inconsistent with plaintiffs' easement appurtenant in Alley A and run counter to plaintiffs' easement in Alley B, reinforced by the grant from defendant to plaintiffs as to rights in Alley B as set forth in the quitclaim deed. A declaratory judgment shall issue.

■■ Injunctive relief ancillary to the declaration of rights here made is also appropriate. Plaintiffs seek a mandatory injunction requiring defendant to remove the concrete step located in Alley A contiguous to defendant's building on Lots 812 and 813. This concrete step was installed, without plaintiffs' approval, in connection with the remodeling done in late 1965. Since neither party can permanently obstruct Alley A without the permission of the other, the injunction will issue as it is the only appropriate form of relief for an obstruction in an easement. Bonds v. Smith, 79 U.S.App.D.C. 118, 143 F.2d 369 (1944).

■ Plaintiffs also seek an injunction against trespasses in any form, by defendant or its agents, upon Alley B. Such an injunction is appropriate particularly since the holder of an easement may lack sufficient possessory interest necessary to obtain relief by means of an action in trespass or for ejectment. In addition to a general injunction against trespass, specific injunction shall issue with reference to removal of the airshaft and a prohibition against the doors opening outwards without express written permission.

■ As to damages, plaintiffs waived any claim for compensatory damages at the outset of the trial. The Court finds that there is no sound basis for an award of punitive damages in this case. Assuming, *arguendo*, that punitive damages may be awarded in the absence of any compensatory damages, the Court finds that the actions of defendant were taken on the advice of counsel, the most serious aspects of the trespass were temporary,

and defendant's conduct was not so reckless, willful and malicious as to necessitate or justify the imposition of punitive damages.

 Finally, the Court wishes to emphasize that this is not a suit to quiet title [4] and the Court will not expand the issues to treat it as such which plaintiffs occasionally seem to be suggesting. Were it such an action, the heirs of Samuel Davidson and the District of Columbia might well be indispensable parties. While this action is clearly an appropriate action for a declaratory judgment insofar as it seeks to resolve the precise dispute existing between the parties at the time the action was filed, it should be kept in mind that declaratory judgment is concerned only with an actual or threatened case or controversy. The declaratory judgment statute gives no new jurisdiction to a United States District Court, only an added remedy. This Court does not intend to give advisory opinions nor to resolve issues that have neither arisen nor are threatened.

As the complaint filed several years ago indicates, the controversy is basically one between two neighbors who have fallen out with each other and with some rancor are seeking to settle a simple trespass case, but the true purposes of this litigation may be something quite different. Plaintiffs have pressed the suit vigorously, long after much of the alleged trespass was discontinued and in spite of the changed conditions. After the record was closed both parties have engaged in a superabundance of briefs and counterbriefs, each expanding arguments as to the issues. The public interest and sound administration of justice has required that the resolution of this case be closely confined to the pleadings and the elements of the actual controversy. The Court is concerned solely with the rights and obligations of the parties toward each other in the light of the quitclaim deed and easements derived from the Davidson subdivision. The Court has not made any determination of fee simple title in this property. Nothing in this opinion is concerned with whether or not the alleys or either of them are eligible to be closed nor is any determination being made as to whether or not taxes are or may later be due on all or a portion of the alley areas. Accordingly, the parties are directed to fashion an order narrowly confined to the determinations here made in the light of the Court's findings of fact and conclusions of law contained in this Memorandum Opinion. All proposed findings of both parties not covered by this Memorandum Opinion are rejected as unsupported, immaterial or unduly evidentiary and unnecessary to the resolution of the case. No costs are to be taxed to either party. An order should be submitted within one week.

---

4. In Count II, plaintiffs asserted that plaintiffs "are the owners and in possession of Alley B." At trial plaintiffs, in response to an inquiry from the Court, asserted they were not basing their position in this law suit on their claim to title in fee simple and the Court considers any allegation to the contrary in the pleadings withdrawn without prejudice. (Tr. 10.)