THOMAS F. McCRAN, attorney-general of the State of New
Jersey, informant,

*v.*

ERIE RAILROAD COMPANY et al., defendants.

[Decided January 7th, 1922.]

1. A railroad company which under its charter had a right to riparian
lands occupied by a bridge without compensation therefor, is not re-
quired, in changing the location of the bridge, to compensate the state
for the taking of riparian lands for the new bridge, since the riparian
lands occupied by the old structure revert to the state for future disposi-
tion, so that it loses nothing by the change in location.

2. The Railroad act (*P. L. 1903 p. 645*) does not supersede or repeal
a special charter authorizing a railroad to erect and maintain bridges
over certain rivers in the state. A statute conferring special privileges
is not superseded or repealed by a general statute, unless the language
thereof clearly expresses such intent.

3. Where a railroad company under its charter was authorized to erect
and maintain bridges over certain rivers without payment of compensa-
tion, this court will not require it, on erecting a new bridge at a dif-
ferent location to compensate a town for land taken for such purpose
either because the preliminary steps in condemnation had not been taken,
or because the town's consent even if required under *P. L. 1917 p. 319*,
was not obtained, especially where there is no evidence determinative of
the value of such lands.

4. An easement cannot be acquired by the public longitudinally along
a railroad right of way by user, particularly where such user, except
along a public highway, is unlawful, and the company plainly indicates
by signs that it is not a public thoroughfare, such use being permissive
only, and mere user without objection being insufficient to constitute an
invitation.

5. A prescriptive right of the public to use a footpath across a rail-
road bridge cannot be transferred to a new bridge erected at an entirely
different location.

On information, pleadings and proofs.

*Mr. Thomas F. McCran,* attorney-general, and *Mr. Harrison
P. Lindabury,* special counsel, for the informant.

*Messrs. Collins & Corbin,* by *Mr. Robert J. Bain,* for the defendants Erie Railroad Company and Newark and Hudson Railroad Company.

*Mr. Clyde D. Souter,* for the defendant town of Kearny.

LEWIS, V. C.

This case comes before the court upon an information filed by the attorney-general of the State of New Jersey to enjoin the Newark and Hudson Railroad Company and the Erie Railroad Company, its lessee, and the director general of railroads (the railroads then being operated by the United States railroad administration) from building a bridge for their tracks across the Passaic river, between the city of Newark and the town of Kearny, a short distance north of the railroad bridge theretofore in use for that purpose. The injunction was sought upon the ground that the bridge, as planned, would occupy certain of the riparian lands belonging to the state, without that right having been granted by the appropriate state officers, and without compensation to the state having been made therefor. An order to show cause with *ad interim* restraint was allowed, but upon the preliminary hearing the temporary restraint was vacated, and the railroads were permitted to proceed with the construction of the bridge upon their paying into court the sum of $11,372.42, which was the amount fixed by the board of commerce and navigation as the price that should be paid for the riparian lands occupied by the new structure, and for the permission to build the bridge. The deposit thus exacted was paid into court and the building of the bridge was proceeded with, the necessary approval by the secretary of war having been obtained, as provided by the act of congress pertaining thereto.

The railroad companies answered, setting up their right to build the bridge and use such riparian lands as were necessary therefor, without compensation to the state, by virtue of their charter and of the General Railroad act of 1903. They also set up that some part of the riparian lands for which the state demanded compensation were claimed by the town of Kearny, and that, therefore, they could not safely pay compensation to the

state. The Newark and Hudson Railroad Company also filed with its answer a counter-claim against the town of Kearny, specifying the lands claimed by both the state and the town, so that the respective claims might be determined and the compensation, if any, fixed.

The town answered the railroad company's counter-claim and set up its claim to the lands involved. It also, in turn, counterclaimed against the railroad companies for the purpose of enjoining the building of the new bridge, unless it was so constructed as to provide a passageway for pedestrians over it, claiming that the public had acquired a prescriptive right to such a passageway over the old bridge, which should be transferred to the new bridge. It also asserted that the consent of the town to the construction of the new bridge, pursuant to chapter 152, laws of 1917, Home Rule act, had not been obtained.

A preliminary order, with temporary restraint, was made on this counter-claim of the town of Kearny, but upon the hearing the restraint was discharged, except as to interference with a sewer of the town on certain of the lands to be occupied by the bridge, and the town was enjoined from interfering with the building of the new structure.

The railroads denied the prescriptive right to the passageway over the bridge and the necessity for the consent of the town under the Home Rule act or otherwise.

The proofs show that there will be no interference with the sewer of the town of Kearny by the new bridge. A very small part of the town's land immediately adjoining the right of way of the railroad on the north will be taken for the new structure. The town concedes that it does not own the riparian lands, but contends that it should be compensated for the small portion of its own land which has been actually taken. The town also concedes that should the legislature direct the removal of the old bridge, its alleged prescriptive right to the passageway over it would terminate with the rights of the railroad, but insists that so long as the bridge remains the alleged prescriptive right in the bridge continues.

The state concedes that the railroads have the right to occupy the riparian lands without compensation, so far as the original

bridge is concerned, under the charter of the Newark and Hudson Railroad Company, which provides:

"It shall be lawful for the said company to lay out and construct a railroad * * * and for that purpose the said company may erect and maintain bridges over the Passaic and Hackensack rivers."

And that such has been the construction of similar grants where the question has arisen by the courts. *Pennsylvania Railroad Co.* v. *New York and Long Branch Railroad Co., 23 N. J. Eq. 157; Attorney-General* v. *East Jersey Water Co., 78 N. J. Eq. 329; Allen* v. *Jersey City, 53 N. J. Law 522; American Dock, &c., Co.* v. *Trustees, &c., 39 N. J. Eq. 409* (at *p. 425*).

It is the state's contention, however, that the railroad's right to thus occupy riparian lands without compensation was exhausted with the location of its right of way and construction of its original bridge; and that compensation must now be made to the state for whatever riparian lands are acquired for the purpose of the new structure; that the railroad cannot claim the implied right to the gratuitous acquisition of riparian lands for bridges to such extent and at such locations as may suit its pleasure or desire; that it must pay the state for whatever riparian lands it now takes and occupies for the new structure.

In support of this contention it relies upon the provisions of the General Railroad acts of 1873 and of 1903, both of which, however, were enacted subsequent to the charter of the Newark and Hudson Railroad Company, which became effective March 17th, 1870.

It is true that this charter is subject to alteration, amendment or repeal, by virtue of section 20 thereof; but the railroads urge that the general provisions of the railroad acts of 1873 and 1903 do not have the effect of altering, amending or modifying the provisions of the special charter of 1870.

Section 16 of the act of 1903 (*P. L. 1903 p. 655*) contains this proviso:

'Provided that such company shall not take any land under water belonging to this state until the consent of the riparian commissioners shall first be had and obtained [unless the said land is at least twenty-five feet under the bed of the water], who are hereby authorized to convey same on receiving such compensation as they may fix."

19

By section 88 of the act of 1903, the act is made to apply to all railroad companies, however formed, created or organized under any law of this state, and by section 89, all acts and parts of acts, general and special, inconsistent with this act, are repealed.

The theory, therefore, upon which the state bases its present claim to compensation for the riparian lands occupied by the new structure is, that the General Railroad act of 1903, requiring compensation, has intervened to abrogate the implied gratuitous grant in the charter of 1870; and that even though this effect has not resulted, the railroad companies are no better off under the charter, because they have exhausted the gratuitous right on the first location, and must now make compensation on the taking of the riparian lands for the new structure.

The fallacy in the second phase of the state's theory, it seems to me, is this: That by the change of location of the new bridge, and the consequent shifting of the position of the line of the railroad, the old structure will pass away, leaving the riparian lands heretofore occupied by it to the state for future disposition. The railroad takes in the new location simply the equivalent of what it abandons in the old; and the state receives in the old location the equivalent of what is taken in the new. If the railroads must now pay the state for what they take in the new location, the state, upon ultimately disposing of what is left in the old, will receive double compensation. I feel, therefore, that the state is made whole and loses nothing by the change in location.

But, aside from this, it seems to me that the general provisions of the act of 1903 are not to be taken as abrogative of the special grants of the charter of 1870. *P. L. 1870 p. 1274; North Hudson County Railway Co. v. Hoboken, 41 N. J. Law 71,* where the court said that—

"No canon of construction is more firmly established than that a general statute will not supersede or repeal a statute conferring special privileges unless there be clear language expressive of such an intent." See, also, *West Jersey Traction Co. v. Camden Horse Railroad Co., 52 N. J. Eq. 452,* where Vice-Chancellor Pitney said: "The act of March 14th, 1893, does not

attempt to resume any previously granted franchise, to repeal any charter, or in anywise to interfere with the chartered rights of any corporation already existing. There is not in it a word indicating an intention to interfere with any vested rights, or to stop any enterprise in course of execution. Such intent will not be inferred unless plainly declared."

The state, therefore, is not entitled to receive the $11,372.42 paid into court by the railroads upon the preliminary hearing.

There is no evidence determinative of the value of the small part of the small tract of land of the town of Kearny occupied by the new structure; and it seems to me, in any event, that whatever compensation the town should receive for the land so taken, and for damages, is a matter to be disposed of by condemnation, pursuant to the provisions of the charter of 1870 of the Newark and Hudson Railroad Company. This court will not now interfere with the structure that has been erected upon those lands, either because the preliminary steps in the condemnation have not been taken or because the consent of the town, even if required, as contended, was not obtained.

So far as the alleged prescriptive right to the use of the bridge by pedestrians is concerned, I feel that the right to cross the bridge has not been established, although it has been in use by the public for many years. There were signs on the bridge forbidding them to cross.

Furthermore, the use referred to was unlawful. Section 55 of the Railroad act (*Comp. Stat. p. 4245*) provides that—

"It shall not be lawful for any person other than those connected with, or employed upon, the railroad, to walk along the tracks of any railroad except when the same shall be laid upon a public highway."

At most, the use of the footpath, primarily provided for the convenience of the railroad employes, was permissive only as to others. If originally permissive it could not ripen into a prescriptive right. *Pennsylvania Railroad Co.* v. *Hulse, 59 N. J. Law 54.*

A mere passive acquiescence by an owner in a certain use of his land by others involves no liability. *Dieckman* v. *Delaware, Lackawanna and Western Railroad Co., 81 N. J. Law* (at p 463).

Both the unlawfulness of the use under section 55 of the Railroad act, and the signs forbidding the use placed on the bridge, repel the presumption of an intention on the part of the railroad to subject its fee to the public use. *Wood* v. *Hurd, 34 N. J. Law* 87. "There is nothing in mere user without objection to constitute an invitation." *Drelich* v. *Erie Railroad Co., 91 N. J. Law 600*, and cases cited.

As to whether a railroad right of way, which is a public highway for the purposes to which it is devoted, is subject to the burden of a grant to a dominant user longitudinally or the prescriptive right based upon such a presumed grant, seems not to have been specifically adjudicated in this state, although it was considered by the supreme court in *Pennsylvania Railroad Co.* v. *Hulse, supra;* and by the court of errors and appeals in *Dickinson* v. *Delaware, Lackawanna and Western Railroad Co., 87 N. J. Law 264.*

But it seems plain, however, that an easement cannot be acquired by the public longitudinally along the railroad right of way by user, particularly in cases where such user, except at the point indicated by the statute, is unlawful, and where the railroad company plainly indicates by signs that the passageway is not a public thoroughfare. A railroad company ought not to be obliged to patrol its tracks from one end to the other to keep off trespassers, and to prevent those who use it longitudinally from claiming a prescriptive right or license, on the ground of acquiescence. *3 Ell. Rail. (2d ed.), § 1250 p. 589.*

In *Brooks* v. *Pennsylvania Railroad Co., 92 N. J. Law 394*, it was contended that a user by prescription had been established across certain railroad tracks. The testimony upon this point was summed up by the statement of a certain witness who testified that "you would come down the street or go up the street and walk right across the railroad tracks you found there." The court of errors and appeals, in holding that no prescriptive right was thereby acquired to cross the tracks, so as to impose a duty upon the railroad to warn persons thus proceeding when trains approached, said: "The testimony goes no further than to show such crossing of a railroad track as is common. Probably, as

strong a case could be made to establish a highway by user at every rod of the railroad—certainly every rod in populous communities where the tracks are anywhere near grade. Such user, if known to the railroad company, is permissive, not under claim of right, and, therefore, not adverse; * * *

" 'Relying for right of way on use, the right could not extend beyond the use, or, as it has been expressed, "if the right of way depends solely upon user then the width of the way, and the extent of the servitude is measured by the character of the user; the easement cannot be broader than the user." *District of Columbia* v. *Robinson, 180 U. S. 92, 100.*' "

Even assuming, *arguendo,* that a prescriptive right to the footpath across the bridge had been established over the old bridge, I do not see how that could be transferred to the new structure at an entirely different location, and to say that the railroad company should be put to the burden of maintaining the old bridge after it had ceased to use it for its railroad purposes simply for the use of pedestrians who had assumed to use the footpath across it, contrary to law and to the express prohibition of the railroad, would seem to me to be absurd.

I will advise a decree in accordance with these views.