# PRESTON *v.* SIEBERT.

EQUITY; RIGHTS OF WAY, OBSTRUCTION OF; GATES; INJUNCTION.

The erection and maintenance by the owner of a city lot, over the rear
ten feet of which the owner of an abutting lot has a "free and
uninterrupted right of way forever for the purpose of ingress,
egress and regress," or two solid wooden gates, about six feet in
height, extending across the entire width of the right of way, and
fastened to pillars sunk in the ground, one of the gates, about
seven feet in width and bolted on the inside, being kept closed all
the time, and the other, about three feet wide and provided with
a bolt and also a latch enabling it to be opened from the outside
when not bolted, being closed at night and sometimes during the
day; and the sodding of the entire right of way, constitute an
unlawful obstruction of the right of way which will be enjoined
in equity.

No. 1263.   Submitted February 6, 1903.   Decided March 4, 1903.

HEARING on an appeal by the defendant from a decree of
the Supreme Court of the District of Columbia enjoining
the obstruction of a right of way in a suit in equity for that
purpose.                                    *Affirmed.*

The COURT in the opinion stated the case as follows:

The controversy in this case, which seems to be an en-
tirely amicable suit between the parties, is as to the meaning
and extent of a grant of a right of way.   A plat of the prop-
erty affected by the grant, and of the property immediately
joining it, is hereto appended for the better understanding
of the matter.

From this plat it appears that original lot number fourteen (14), in square numbered one hundred and fifty-eight (158), in the city of Washington, had a front of sixty-three (63) feet on Eighteenth street West, and extended back eastward as a rectangle a distance of 120 feet. North of it was a part of original lot fifteen (15), in the same square, with a front of about forty-six feet on Eighteenth street, but with an irregular north boundary, which caused it to terminate in a sharp point at the northeast corner of lot 14. North of this part of lot 15 was an alley 10 feet wide, but of peculiar configuration, conforming to the northern boundary of part of lot 15. First, it extended some little distance straight eastward, then made a detour to the southeast, and extended to the easternmost point of lot 15 and the northeastern point of lot 14. The greater part of this alley had been dedicated to the public by Messrs. Dulaney and Whiting, who owned lot 16 to the eastward of lots 14 and 15; but the rear part of it, a rectangle 10 feet by 26.81 feet, had been, it seems, retained by them as a "private alley." For the sake of brevity it has been designated in the proceedings as "private alley," while the front part has been designated as the public alley. Why the distinction between the two parts was made is not apparent from the record of the case before us.

Neither from the public nor the private alley was there any access to lot 14, which was separated from the latter by the triangular apex of the intervening part of lot 15. But this triangular apex, or triangle, as it may be designated for brevity, to the extent of 10 feet westward from the eastern end or point of the lot, and with a line running thence northward to the private alley, was at some time segregated from the remainder of lot 15, and a right of way granted over it to the owner or owners of lot 14, for the ordinary use of an alley. It does not appear in the record when or by whom or how this right of way over this triangle was created. But it is assumed to have been duly vested in the owners of lot 14 when these latter executed the deeds of conveyance now to be mentioned.

On June 10, 1895, two ladies, Mrs. Phelps and Mrs. Brown, who then owned lot 14, conveyed the same in two separate parcels, one being 21 feet front and the other 42 feet front, and each with the same depth of 120 feet, to Calderon Carlisle and Randall Hagner, as trustees, to sell the same and to dispose of the proceeds of sale in a certain specified manner. Why the lot was, for the purpose of this conveyance, divided into two separate parcels, 21 and 42 feet front, respectively, does not appear. The conveyance also included the little triangle, which has been mentioned as segregated from lot 15, and a right of way over the " private alley " mentioned " for the ordinary uses of an alley " for the north parcel of lot 14. In connection with the south parcel of lot 14, the one which was 42 feet front by 120 feet, there was granted for the use of this parcel a perpetual right of way " for the ordinary uses of an alley " for this parcel over the " private alley " before mentioned. Strangely enough, although this " private alley " could be reached from lot 14 only by passing over the triangle of lot 15, no mention is made of this latter in connection with this southern parcel as constituting part of the right of way. It seems to have been presumed by all parties as included in it, inasmuch as the fee simple title to the triangle was apparently vested in

the grantors in this deed of trust to Carlisle and Hagner, and became vested in the latter by virtue of this deed.

On February 17, 1896, Carlisle and Hagner, trustees, sold to Mrs. Eliza O. Siebert, the appellee, the south 35 feet of lot 14 by the depth of the lot, being somewhat less in width than the second parcel of the lot as conveyed to them by the previous deed of 1895; and the conveyance was " with the free and uninterrupted right of way forever," for the purpose of ingress, egress, and regress over the rear ten (10) feet by the full width of the north twenty-eight (28) feet front of said original lot numbered fourteen (14), and also over the " triangle " and the " private alley." It is under this deed that the appellee claims in the present case.

Mrs. Brown, one of the grantors in the deed of 1895 to Carlisle and Hagner, trustees, seems to have again become the owner of the northern part of lot 14, being 28 feet front by 120 feet in depth, and being all that was not conveyed to Mrs. Siebert; for by deed of February 23, 1901, she conveyed this portion to the appellant Robert L. Preston in fee simple, " subject to right of way over the rear ten (10) feet by full width," as expressed in the deed. And it was stated in argument that since the initiation of this controversy the appellant had acquired the fee simple title to the triangle of lot 15.

It appears that at the time of the conveyance of the southern part of lot 14 to the appellee, on February 17, 1896, the whole lot was vacant and unimproved by any building thereon; but the appellee soon thereafter erected a dwelling-house for herself on the portion purchased by her, and has continued since and yet continues to reside in it. The appellant also, soon after his purchase of the northern part, proceeded to erect there a residence for himself, which occupied the whole front of his lot. The two portions were then separated by a brick wall, which extended to the rear end of the lot. In the rear part of this wall is a gate, or door, stated to be about three feet wide, which gives ingress and egress to and from the appellee's lot over the right of way established across the rear 10 feet of the appellant's lot.

Up to the time of the appellant's purchase and his construction of his dwelling-house this rear portion was entirely free and unobstructed in any way; and there seems to have been nothing to distinguish it in any way from the triangle and the private alley north of it. The distinction thus far existed only on paper.

But in September of 1902, soon after the erection of his house, in order, as he says, to protect his premises from intrusion, the appellant, against the protest of the appellee, erected two gates along the northern line of his lot, and between his lot and the triangle of lot 15, and extending also across the entire width of the 10 feet reserved for the appellee's right of way. These gates are of solid wood, about six feet in height, and are fastened to pillars sunk in the ground, one at each end of the 10 feet space, and one, a small middle pillar, rising, as it would seem, only a few inches above the ground, but well within the right of way. One gate is about seven feet in width, is fastened on the inside by a large iron bolt, and is kept entirely closed all the time. The smaller gate is about three feet in width, and is also provided with a bolt to fasten it from the inside. But how long and at what times this gate is kept closed and fastened there is controversy between the parties. The appellee alleges that it is kept fastened at night, and sometimes in the daytime. This the appellant to some extent denies. The appellant has also sodded over the entire space, 10 feet by 28, reserved for the appellee's right of way.

The appellee alleges that, in order to have her supplies and fuel brought into the rear of her premises, and ashes, garbage, and like things removed therefrom, it is necessary for the persons who come for such purposes to come round to the front door of her residence and to give notice, that the gates may be opened from the inside. She claims that by the erection of the gates her free and unobstructed right of way, guaranteed to her by her deed, was obstructed. Having demanded their removal, and being met with a refusal, she instituted the present suit by the filing of a bill in equity to enjoin the appellant from maintaining them.

With her bill of complaint she filed as exhibits copies of the deeds of conveyance which have been mentioned, and two affidavits, one that of her husband, who was her agent in the purchase of her property, and the other that of a real estate broker, who acted as agent for Carlisle and Hagner, trustees. The purport of these affidavits was merely to explain and emphasize the purpose of the appellee in procuring the right of way. Upon the coming in of the appellant's answer, the cause was set down for hearing " upon the bill, the answer, and the papers and proceedings in the cause." After hearing a decree was rendered in accordance with the prayer of the bill of complaint, whereby the defendant was enjoined from erecting and maintaining the gates and fences in question, or any other gates and fences across or over the space reserved for the appellee's right of way.

From this decree the defendant has appealed.

*Mr. Frank W. Hackett* for appellant:

The deed to complainant designates the close over which the right of way is given. It does not describe the way itself. *Johnson* v. *Kinnicutt,* 2 Cush. (Mass.) 153.

No way existed at the date of the grant. The right is to pass over the rear of the lot. The word " alley " is not used. There was no grant of an open way. The affidavits in the record are not admissible to show the intent of the parties. *Comstock* v. *Van Deusen,* 5 Pick. (Mass.) 165.

Complainant got a right (to be exercised freely and continuously with no suspension, even for the briefest period) of passing and repassing. The words " free and uninterrupted " denote the quality of the right: they do not characterize the way itself. It was the grant of a means of getting to and from the private alley. It conferred the privilege of keeping in motion over Mr. Preston's land.

It is a question of fact for the jury to say whether the gates are an obstruction. *Connery* v. *Brooke,* 73 Pa. St. 80; *Boyd* v. *Bloom,* 152 Ind. 152; *Baker* v. *Frick,* 45 Md. 337. Unless an open way is expressly granted the owner

of the land may put up gates, if as a matter of fact this be a reasonable use of his land. *Garland* v. *Furber,* 47 N. H. 301; Goddard on Easements (ed. 1880), 331, and cases cited; *Phillips* v. *Dresler,* 122 Ind. 414.

In the well-considered case of *Short* v. *Devine,* 146 Mass. 119, gates in a city lot erected after the grant, in circumstances like that of the case at bar, were held to be maintainable.

Mrs. Siebert knew that the lot would be built upon, and that in the near future the owner would have to fence it. She did not buy the right to have her neighbor's lot kept open. That the lot remained vacant did not prevent the owner from putting up a gate when it should become needful. *Green* v. *Goff,* 153 Ill. 534; *Hartman* v. *Frick,* 167 Pa. St. 18.

The grant was that of a " free and uninterrupted right of way." It was not that of a " free and uninterrupted right of an open way." The gates were usual and reasonable, and they offered no interruption to the enjoyment of complainant's rights in the premises.

The grantee of a right of way must exercise his privilege in a manner as little burdensome to the grantor as possible. *Peabody* v. *Chandler,* 59 N. Y. Supp. 241.

The serious loss to Mr. Preston, and the trifling character of the inconvenience to be sustained by Mrs. Siebert, are elements from which it can be determined whether the maintenance of this gate is reasonable. A like principle applies in city and country. The fact that a cart or wagon cannot turn in the ten-foot width, proves that it was not contemplated that a cart would pass through. At all events, the Siebert gate being only three feet wide, a cart cannot pass into that lot; and a cart cannot, even if backed in all the way from the street, *stand* upon Mr. Preston's land. Hence, for the present at least, the gates are not unreasonable.

*Mr. Walter V. R. Berry* and *Mr. Benjamin S. Minor* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

When the owners of lot 14 sold the south part of that lot to the appellee, and set apart the right of way for her over the rear 10 feet of the northern part, it is very clear that it was their intention to give a right practically commensurate with the similar right existing for the benefit of the whole lot over the triangle and the private alley north of it.    The width of 10 feet was the same in all the different parcels, and that width was established undoubtedly in order to conform to the dimensions of the public or dedicated alley leading beyond them to the street.    The parties had probably good reason to retain the title to themselves and not to dedicate it to the public; but that they were to all reasonable intents and purposes intended to be prolongations of the public alley would seem to be beyond doubt.

It will be noticed that in the first of the deeds of conveyance given in the record, that of Mrs. Brown and Mrs. Phelps, the owners, to Carlisle and Hagner, trustees, the right of way conveyed is specified to be in express words " for the ordinary uses of an alley."    For some reason not apparent in this record, the conveyance divides lot 14 into two parcels — one, the northern part, of 21 feet front; and the other, the southern part, of 42 feet front; and while it gives to the former a right of way over the triangle and the private alley north of it, it annexes to the latter only a right of way over the private alley, and omits all mention of the triangle.    This omission is presumed to have been an inadvertence.    There was also an omission of any express grant, as appurtenant to the south part of lot 14, of any right of way over the northern part.

But when Carlisle and Hagner, trustees, came to sell the south part of lot 14, they made practically another subdivision, sold 35 feet front instead of 42, and left the northern part with a front of 28 feet.    And they annexed to this south part, and granted to the appellee, as the purchaser of it, " the free and uninterrupted right of way forever for the purposes of ingress, egress, and regress over the rear ten (10) feet by

the full width of the north 28 feet front" of the lot, together with a similar right of way over the triangle and the private alley north of it.    But the expression "for the ordinary purposes of an alley," which was used in the deed to themselves, was omitted — whether purposely or not we are not advised. It may be that the words actually used were deemed the equivalent of those which were omitted; or it may be that the omission was for the purpose of precluding any possible implication of a dedication of the several spaces to the public, and to reserve them exclusively for private use.    And yet there can be no doubt whatever that, so far as the appellee was concerned, the grant of the private way was for the ordinary uses of an alley.    For not otherwise would a width of 10 feet have been required.

A right of way of three or four feet in width would have sufficed for the passage of persons; only for carts and wagons was a width of 10 feet required.    In fact, it is not controverted by the appellant that the appellee, under her grant, is entitled, by herself, and the members of her family, and her agents, and those who have business with her, to go in and out over the 10 feet reserved for her right of way with wagons and carts and carriages and other ordinary conveyances, and, therefore, to use the space for all the ordinary purposes of an alley.    The construction by the appellant of two gates over and across the right of way, one evidently for wagons and other vehicles and the other for persons, is a confirmation by him of the extent of the use to which the appellee was entitled to put the right of way.    In this regard there would seem to be no controversy between the parties.    The contention of the appellant is that the gates do not unreasonably interfere with the right of way in any respect; the complaint of the appellee is that they seriously interfere with the free and uninterrupted use of the right of way guaranteed to her by her deed.

We do not deem it necessary to follow counsel in their ingenious argument as to whether the expression "free and uninterrupted" is the equivalent of "open;" and whether in the city, as in the country, where it is often necessary to

fence in stock and to guard a road from intrusion, the construction of gates over a right of way is nothing more than a reasonable precaution, which does not substantially interfere with the right. Every case probably depends upon its own circumstances, and usage and custom undoubtedly have much to do with the question of the reasonableness of an apparent obstruction. Every gate over a right of way is to a greater or less extent an obstruction; but if the circumstances are such that it constitutes no more than a reasonable protection to property, which all the parties might well be supposed to have anticipated when the right of way was created, and if it is such an obstruction as does not unreasonably or in any substantial manner interfere with the use of the right of way, a gate should not be regarded as an unlawful impediment to the owner's enjoyment of such right of way.

But it requires no great force of argument and no citation of authorities to show that, within a large and growing city, where expedition is often a necessary concomitant of action, there can be no free and uninterrupted right of way for ingress and egress, when that right of way is barred by solid wooden gates secured by iron bolts on the inside, and when bolted capable of being opened only from the inside. Free egress may possibly be consistent with gates so bolted and barred; but free ingress is certainly impossible through such barriers, and the appellee is entitled to free ingress as much as to free egress. If the appellee having gone forth from her house desired to return by this right of way, it would be effectively closed to her. If wagons came to bring supplies to her house and desired to introduce them through this means of approach to the house, as she is entitled to have done, they would be prevented from doing so until they communicated with the house from the street in front and procured to have the gates opened by some one from the inside. Without the same process she could not have access secured to wagons for the removal of ashes and garbage. Her right of way would not only be obstructed, but virtually destroyed.

It is suggested on behalf of the appellant that the gates

need not be bolted, although it is admitted that the larger one is kept "entirely closed all the time, day and night;" and that the smaller gate is provided with a latch which can be readily opened from the outside. Plainly this suggestion is no answer to the appellee's claim of right. It is admitted that seven of the ten feet are wholly and continuously barred; and as to them the obstruction is complete. And as to the smaller gate, even though it has a latch to it, yet it is capable of being barred against the appellee at any time, and, if barred, the latch would be useless. It may be noted also, that, while the appellant's answer avers that this smaller gate has been kept unfastened during the period of this litigation, to ascertain the rights at law of the appellant, as he says, yet it is very evident that previous to the litigation it had been kept closed "during the night, and sometimes in the day," an allegation of the bill of complaint which is not denied by the appellant in his answer.

It is objected, also, on the part of the appellant that wagons and carts may not conveniently turn within the 10 feet of the right of way. But this is not relevant or to the point. They might back out or back in; or they might turn within the space of the triangle and private alley to the north. It is no concern of the appellant whether they can turn or not, provided they do not go upon his lot outside of the 10 feet of the right of way, which, of course, he is entitled to prohibit.

It is conceded that the appellant has sodded over this space of 10 feet reserved for the right of way; and he claims that this is no unlawful obstruction of the right. Assuredly the highways and byways of the world are not sodded; nor are the lanes and pathways over which pedestrians go. Sodding the highway or the footpath, while, perhaps, it is only a minor interference with it, is distinctly an act antagonistic to its usefulness as a highway or footpath, and an assertion of ownership inconsistent with the continued existence of the right of way.

It may be that the parties to this cause can, and should, come to some mutual understanding for the protection and security of their respective interests. Both have substantial

rights in the premises which should be respected. But the appellant, having taken his property burdened with the appellee's right of way, must yield to the convenience of the latter, whose right in the premises is paramount and may not unreasonably be obstructed.

We are of the opinion that the decree of the Supreme Court of the District of Columbia in the premises is right and just, and that it should be *affirmed, with costs. And it is so ordered.*