**KOGOD et al. v. COGITO.**
**No. 11052.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 21, 1952.

Decided Nov. 6, 1952.

744

Louis M. Denit, Washington, D. C., with whom Thomas S. Jackson, P. Baxter Davis, Martin R. Fain, and Irving B. Yochelson, Washington, D. C., were on the brief, for appellants.

H. Winship Wheatley, Jr., Washington, D. C., with whom H. Winship Wheatley, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

This appeal is from an injunction restraining appellants from obstructing appellee's use of two alleys, on appellants' land, that connect appellee's adjoining land with a street. The injunction is based on a finding that appellee has a right of way by prescription.

Union Stockyard Company once owned the whole tract. In 1894 it conveyed a landlocked portion to Washington Abattoir Company with an express easement in a driveway, not now in dispute, across part of the retained land to the street. But because of the location of Abattoir's main slaughterhouse it was often more convenient to use the alleys that are in dispute. For nearly 40 years these alleys were traveled during business hours by customers, vehicles bringing in livestock for slaughter, and others who had occasion to come to the abattoir property. The alleys were equipped with gates, but the gates were kept open during the day except when movement of animal traffic made it necessary to close them. At night the main alley was not used and Stockyard employees locked it.

The abattoir ceased operations in 1933.[1] From that time until 1943, when appellee acquired "all of the right, title and interest" of Abattoir in the land, use of the alleys was much reduced, but during at least part of this period they were used by a mailman, an occasional truck removing fixtures from the plant, and an employee who made weekly visits to care for machinery. Since 1943 the alleys have again been in active use in connection with various commercial enterprises that have leased buildings on appellee's land.

In 1941 appellants acquired the land that Stockyard had retained in 1894, and proceeded to develop it by building stores and a theatre.

The District Court found in 1951 that use of the alleys by appellee's predecessors in title "since prior to the year 1906" had been open, continuous, and adverse. At least as to the time between 1906 and 1933, the evidence supports this finding. Therefore a right of way by prescription arose. It may be, as appellants contend, that Stockyard allowed Abattoir and its

1. Before 1933 the abbattoir site and buildings were several times transferred to successor slaughtering companies. In each case all the interest of the predecessor company was conveyed. Since it is not contended that these transfers affect the easement question the following discussion will ignore them.

successors to use the alleys as an accommodation, but there is no evidence that permission was ever asked or given. This distinguishes the case from Umhau v. Bazzuro, 76 U.S.App.D.C. 394, 133 F.2d 356, on which appellants rely. Open and continuous use of another's land is commonly presumed to be adverse in the absence of evidence to the contrary.[2] Appellants contend that the use was not continuous because Stockyard closed the gates at night.[3] But continuity of use is to be determined in relation to the nature of the right claimed. Use whenever needed, if reasonably frequent, is enough. 17 Am.Jur., Easements, § 60; 3 Powell on Real Property § 413. Abattoir used the alleys in connection with business activity. The gates were open, except when movement of animal traffic made it necessary to close them, during the hours when such activity was carried on. Use was therefore continuous within the meaning of the rule. Cf. Preston v. Siebert, 21 App.D.C. 405, 414; Anneberg v. Kurtz, 197 Ga. 188, 28 S.E.2d 769, 152 A.L.R. 338; Jarman v. Freeman, 80 N.J.Eq. 81, 83 A. 372.

 It does not appear that the easements were extinguished when, or at any time after, the abbatoir went out of business.[4] An easement created for a particular purpose ceases when the purpose ceases. 3 Tiffany, Law of Real Property, 3d ed., § 817. But the evidence would hardly have supported and certainly did not require an inference that the claimed rights of way were limited in purpose to use in connection with an abattoir. The location of the various parcels of land relative to

the street makes it highly advantageous, in connection with any sort of business activity, to use the alleys in reaching appellee's land. There is nothing to indicate that the presence of an abattoir instead of some other business was considered significant by the parties.

 The reduced use of the alleys after the abattoir closed was not an abandonment. Abandonment is a question of intention. "The ultimate fact to be established is the intention to make no further use of the easement." 3 Powell on Real Property § 423. There is no evidence of such an intention. As far as appears, the alleys have always been used to the extent that business required. This negatives any intention to abandon. Even total disuse is not necessarily abandonment but is merely evidence on the question of intention. Restatement of the Law of Property § 404; Sabins v. McAllister, 116 Vt. 302, 76 A.2d 106.

 Appellants suggest that the present use of the alleys by heavy trucks is a materially increased use. But it does not appear that the additional burden on appellants' land, if any, is so great as to be unreasonable in the circumstances. Restatement of the Law of Property § 479; 3 Powell on Real Property § 416; cf. Penn Bowling Recreation Center v. Hot Shoppes, 86 U.S.App.D.C. 58, 61, 179 F.2d 64, 67, 16 A.L.R.2d 602.

We have considered appellants' other contentions but find no prejudicial error.

Affirmed.

---

2. Camp Far West Irr. Dist. v. United States, Ct.Cl., 68 F.Supp. 908, 913 (applying California law); Fortier v. H. P. Hood & Sons, Inc., 307 Mass. 292, 30 N. E.2d 253; Powell v. Magee, 191 Va. 315, 60 S.E.2d 897.

3. Also, one witness testified that Stockyard once prevented Abattoir from bringing in a load of hay. But it is not clear that he was speaking from personal

knowledge and apparently the trial judge, in the light of the other evidence, thought he was mistaken.

4. It follows that appellee has a prescriptive right unless there was a subsequent abandonment. The transferee of a dominant tenement takes easements unless they are excluded by the instrument of transfer. 3 Powell on Real Property § 418.