Paul WIECK, Appellant,

v.

Martin STERENBUCH and Diane I. Sterenbuch, Appellees.

No. 9168.

District of Columbia Court of Appeals.

Argued Oct. 8, 1975.

Decided Jan. 16, 1976.
Rehearing and Rehearing en Banc Denied Feb. 25, 1976.

---

Alan S. Novins, Washington, D. C., with whom Alan S. Mark, Washington, D. C., was on the brief, for appellant.

Herbert A. Rosenthal, Washington, D. C., for appellees.

Before HARRIS and MACK, Associate Judges, and McARDLE, Associate Judge, Superior Court of the District of Columbia.*

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

HARRIS, Associate Judge:

This appeal challenges the granting of a preliminary injunction which directed appellant not to deny the use of part of his own property to his next-door neighbors.[1] We reverse.

I

Appellant and appellees reside in adjacent homes in Georgetown, at 3267 and 3265 P Street, N.W., respectively. Prior to November 24, 1950, the two properties were owned by one individual. On that date the owner conveyed 3267 to a purchaser who later deeded it to Mrs. Cecille de Rochefort. Mrs. de Rochefort sold her home to appellant on May 31, 1974. The premises at 3265 were sold in September of 1968 to a purchaser who later conveyed the property to appellees on August 3, 1970. On that date, appellees' neighbor to the west was Mrs. de Rochefort.

As is true of many homes in Georgetown, appellees' house extends to the east and west boundaries of their land. The eastern side of appellant's home, however, does not extend to his boundary line. The principal entrance to appellant's home is on the east side of his house, and there is a walkway extending alongside the house to his backyard. Appellees also have a backyard, which they readily can reach from the rear of their home. Prior to appellant's purchase of his property, and during the early part of his residence on P Street, appellees made somewhat regular use of their neighbor's side walkway to get to their backyard. They used that access route for both social purposes, e. g., parties in their backyard, and maintenance purposes, e. g., house painting and backyard landscaping. Mrs. de Rochefort had erected a gate with a lock to bar unlimited access to her property, but she gave appellees a key so that they could continue to use her side walkway.

In the summer of 1974, appellees had a large party in their backyard. Their guests gained access to the party through appellant's property. Thereafter, appellant changed the lock on the gate. He did not give appellees a key to the new lock. On October 8, 1974, he erected a fence between the two backyards. On October 9, appellees brought an action seeking to establish their right to access to their backyard via appellant's property. Claiming an easement by prescription, appellees requested both injunctive relief and damages. The court denied their request for a temporary restraining order, and scheduled a hearing on the question of a preliminary injunction.

At that hearing, appellees made basically four points. First, they contended that use of appellant's side walkway had been made by them during their four-year occupancy of the premises at 3265, and by their predecessors in interest for the 15-year limitation period established by D.C.Code 1973, § 12–301. Second, they claimed that their use had been adverse. Third, appellees cited their allegedly continuous use of the walkway, testifying that the path had been traversed on an average of once weekly by them, their guests, or by workmen. Fourth, appellees asserted irreparable harm. They alleged three deprivations caused by appellant's discontinuance of their use of his property: (1) a diminution in the value of their property; (2) the difficulty and inconvenience, and conceivably the impossibility, of having workmen gain access to their rear yard through their own house; and (3) the possibility that appellees might be trapped in their backyard, with no outside means of escape, by intruders, a fire, or some other calamity.

The trial court made brief oral findings of the existence of an easement and of irreparable injury, and granted the preliminary injunction. The court then signed

---

1. D.C.Code 1973, § 11–721 (a) (2) (A) permits appeals from interlocutory orders of the Superior Court which resolve questions involving injunctions.

(as slightly modified) a preliminary injunction order which was submitted by plaintiffs' counsel. The "Finding of Facts" contained therein included the following:

2. Plaintiffs and their predecessors in title have openly and adversely used the thoroughfare which is physically located on defendant's property. Such use has been continuous within the meaning of *Kogod v. Cogito,* 91 U.S.App.D.C. 284, [200 F.2d 743], for a period in excess of 15 years prior to the filing of this action.

3. Plaintiffs need access to the rear of their property via this thoroughfare for themselves, their guests, workmen, contractors, and gardeners; because direct level access through their house does not exist.

4. The plaintiffs will suffer irreparable harm pending the trial on the permanent injunction and have no adequate remedy at law.

5. The plaintiffs' interests in having continuous access to the rear of their property *pendente lite* exceeds any harm or inconvenience to the defendant.

## II

When we review the granting of a preliminary injunction, it is not our task to resolve the overall merits of the dispute between the parties. *See A Quaker Action Group v. Hickel,* 137 U.S.App.D.C. 176, 180, 421 F.2d 1111, 1115 (1969). Rather, our role is confined to (1) examining the trial court's findings and conclusions to see if they are sufficiently supported by the record; (2) assuring that the trial court's analysis reflects a resolution of all the issues which necessarily underlie the issuance of an injunction; and (3) inquiring into any other claims of an abuse of discretion by the trial court. Our study of the record leads us to conclude that the trial court did abuse its discretion by failing to consider and find all of the necessary prerequisites to the issuance of a preliminary injunction.[2]

A preliminary injunction is an extraordinary remedy, and the trial court's power to issue it should be exercised only after careful deliberation has persuaded it of the necessity for the relief. A proper exercise of discretion requires the trial court to consider whether the moving party has clearly demonstrated: (1) that there is a substantial likelihood he will prevail on the merits; (2) that he is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order.[3]

While it is fundamental to the granting of an injunction that the court make specific findings on all prerequisites for such relief, the most important inquiry is that concerning irreparable injury. This is true because the primary justification for the issuance of a preliminary injunction "is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the mer-

2. Additionally, it was improper for the trial court to have found—both orally and in the written order—that the plaintiffs do have an easement. At a hearing on a request for preliminary relief, only the likelihood of success on the merits is to be considered. An adjudication of the merits must await a full and final hearing on the merits. *See Industrial Bank of Washington v. Tobriner,* 132 U.S. App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968).

3. *See, e. g., District 50, United Mine Workers of America v. International Union, United Mine Workers of America,* 134 U.S.App.D.C. 34, 412 F.2d 165 (1969) ; *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974) ; *Detroit Newspaper Publishers Association v. Detroit Typographical Union No. 18,* 471 F. 2d 872 (6th Cir. 1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973).

its." *Canal Authority v. Callaway*, 489 F. 2d 567, 576 (5th Cir. 1974).[4] An injunction should not be issued unless the threat of injury is imminent and well-founded, and unless the injury itself would be incapable of being redressed after a final hearing on the merits. *See Canal Authority v. Callaway, supra*, at 573; *Holiday Inns of America v. B & B Corp.*, 409 F.2d 614, 618 (3rd Cir. 1969).

The harm alleged in this case took three forms: (1) a diminution in the value of appellees' property; (2) a degree of difficulty for workers' performing maintenance in the future; and (3) the possibility of appellees' being "trapped" in their backyard without means of escape (other than through their home) by some calamity. Such potential injuries are too nebulous to warrant the exercise of the trial court's equity power.

Regarding the allegation of decreased worth of their property, appellees presented no evidence of value, of any intent to sell, or of any potential buyer. Speculation as to a fall in the property's value, with no proof at all (and in the face of the steadily rising market value of homes in the neighborhood, a large percentage of which, like appellees', have no outside means of access to their backyards), is insufficient to demonstrate a need for immediate equitable relief.

Similarly, their allegation that maintenance personnel otherwise would be able to reach the backyard only by going through their house falls considerably short of exhibiting an immediate or impending deprivation. No evidence of needed (or even contemplated) repairs to the rear of appellees' home was introduced. The record also is devoid of any assertion that appellant, if requested, would deny appellees reasonable access to their backyard via his property. Obviously, some degree of refusal of access is implicit in the new lock on the gate and the construction of the fence. However, appellant's counsel stated that his client "would not be unreasonable" if, for example, appellees asked to use the walkway to take ladders to their backyard.

Appellees also relied upon purported fears of being imprisoned in their backyard if there were an occurrence such as a burglary or fire. However, there is nothing in the record to support a sense of urgency over such a hypothetical circumstance, and it is a basic demand of equity that before a preliminary injunction may issue, there must be "existing or actually threatened real situations". *O'Reilly v. Wyman*, 305 F.Supp. 228, 231 (S.D.N.Y.1969) (three-judge court).

The order granting the preliminary injunction contained no discussion of the prerequisites for interim relief. The trial court merely concluded, without elaboration, that the plaintiffs would suffer irreparable harm and that such harm would exceed any harm or inconvenience to the defendant. The appellees not having made an adequate showing of irreparable harm, and the record containing no indication that the trial court focused directly on the likelihood of their success on the merits to counterbalance that fact, *see Canal Authority v. Callaway, supra* at 576, appellees were not entitled to immediate relief while awaiting the full course of the litigation between the parties. The ruling appealed from is reversed, and the case is remanded with instructions to enter an order denying appellees' request for a preliminary injunction.[5]

*Reversed and remanded.*

4. The often-stated maxim that a preliminary injunction is issued to preserve the status quo is an expression of the same concern for the prevention of interim injury which would undermine the final disposition of a case on the merits. *See* 7 Moore's Federal Practice ¶ 65.04[1] (2d ed. 1974).

5. We specifically vacate the trial court's finding of an adverse use of the walkway for more than 15 years, without prejudice to a full consideration of that question *de novo* when the case ultimately is tried on its merits.

MACK, Associate Judge (dissenting):

I would affirm.

The decision to grant a preliminary injunction normally lies in the discretion of the trial judge and our scope of review is accordingly limited. *A Quaker Action Group v. Hickel*, 137 U.S.App.D.C. 176, 180, 421 F.2d 1111, 1115 (1969). While it is true that the trial court's findings and conclusions might have been more artfully expressed, I do not find them so clearly erroneous, in the face of this record, as to amount to an abuse of discretion.[1] I see no reason for disturbing, on this interlocutory appeal, the findings of two trial judges[2] that the appellant, in erecting an impassable fence, was subjecting appellees to irreparable injury in the use and enjoyment of their property. To do so seems particularly inappropriate where, as here, the trial court's ruling was merely to permit appellees to use a walkway which they had always used,[3] and thus to preserve the "status quo", *i. e.* the last uncontested status which preceded the pending controversy. *See District 50, United Mine Workers of America v. International Union, United Mine Workers of America*, 134 U.S.App. D.C. 34, 37, 412 F.2d 165, 168 (1969).

Nor do I see the finding of irreparable harm as being unsupported because of allegations remote or speculative. The interference with land use was a presently existing real threat. I find it a somewhat strained construction of the law to say that the appellees, before seeking preliminary relief from such interference, are required to show that there were pending negotiations for sale (exemplifying a diminution in value of the property) or needed repairs[4] (showing extreme inconvenience of access) or (most difficult of all) an approaching calamity.

Finally, I note that a primary consideration with respect to the granting of a preliminary injunction is the balancing of the relative convenience or inconvenience to the respective parties. *See District 50, United Mine Workers of America, supra,* 134 U.S.App.D.C. at 37, 412 F.2d at 168; *Levy v. Arsenault*, D.C.Mun.App., 63 A.2d 671, 672 (1949). While there is some suggestion that the appellant denied access to the walkway after appellees had entertained in their backyard, the appellant did not offer testimony to urge harm or inconvenience. The trial court specifically found that the appellees' interest in having continuous access to the rear of their property *pendente lite* exceeded any harm or inconvenience to the appellant. I agree; and I respectfully dissent.

---

1. It would appear, for example, that the trial court in finding open, adverse, and continuous use by appellees of the thoroughfare on appellant's property, was not adjudicating the merits but addressing himself to the likelihood of success on the merits. *See Industrial Bank of Washington v. Tobriner*, 132 U.S.App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968).

2. Prior to the hearing on the preliminary injunction, a hearing was had on a motion for a temporary restraining order before another trial judge. While that court, because of the close proximity of the date he set for the hearing on the preliminary injunction, declined to issue the temporary retraining order, he specifically noted:

". . . it appearing to the Court that the acts of the defendant complained of, consisting of willfully and without right denying plaintiffs the use of the alley and destroying and damaging plaintiffs' land and other property by the construction of a fence are subjecting the plaintiffs to continuing and irreparable injury . . . . "

3. The ruling did not require removal of the fence but a hinging which has been accomplished.

4. According to appellees, the erection of the fence substantially destroyed a row of their bamboo trees about 20 feet in length.