DAVCO REALTY COMPANY, A MINNESOTA PARTNERSHIP, APPELLANT, V. PICNIC FOODS, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

252 N. W. 2d 142

Filed April 6, 1977. No. 40836.

John C. Brownrigg and J. Patrick Green of Eisenstatt, Higgins, Kinnamon, Okun & Stern, for appellant.

Michael G. Helms of Schmid, Ford, Mooney, Frederick & Caporale, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an appeal from an action brought by the plaintiff, Davco Realty Company (hereinafter referred to as "Davco"), seeking to have a constructive trust imposed upon the assets of the defendant, Picnic Foods, Inc., (hereinafter referred to as "Picnic"), to the extent necessary to satisfy its claim of damages.

Initially, we note that, while this action is equitable in form in that the relief sought is the imposition of a constructive trust, in substance this is a law action with Davco seeking damages for an alleged breach of contract and will be so treated on appeal.

The District Court held that the agreement entered into between the parties was too indefinite and uncertain in its terms, with regard to the construction of asphaltic paving, and thus was unenforceable. The District Court further held that the purposes for which easements were mutually conveyed by the parties were abandoned and that they should be extinguished as a matter of law. The District Court directed the parties to execute appropriate releases of the easements. We affirm the judgment of the District Court.

The facts giving rise to this dispute are as follows: The plaintiff is a Minnesota partnership, consisting of Abraham and Miriam Davidson. The defendant Picnic is a Nebraska corporation which was dissolved by the Secretary of State on August 2, 1972, for the nonpayment of occupation taxes. Defendants Burden, Devaney, and Steffen were officers and directors of Picnic at that time. The defendant, Star Stations, Inc., provided all Picnic's capital and was the intended sole stockholder of Picnic.

The parties to this suit own adjacent properties in the City of Omaha, Nebraska. Picnic's property at the time of the agreement was undeveloped. On the Davco property, a building occupied by Davidson Furniture Company was located. Davidson Furniture Company's president, Arthur Davidson, is the son of Abraham and Miriam Davidson. In the winter of 1968 or spring of 1969, Joseph Wilkerson, then an officer of Picnic, approached Arthur Davidson about obtaining for Picnic an easement across Davco's property. This easement was desired so that Picnic could have ingress and egress to its property from U. S. Highway No. 30A, known as West Dodge Road. Picnic was intending to develop several business concerns on its property and needed the easement to get customers on its property to and from West Dodge Road.

At the direction of his parents, Arthur Davidson acted as agent for Davco during these negotiations. Davco had contemplated expanding the building on its property. If, however, the contemplated addition was to be built, there would be very little remaining area on Davco's lot for customer parking. Davco thus entered into an agreement with the idea and purpose of obtaining access to additional parking area, which would enable it to construct the addition.

As a result of negotiations between their respective agents, Wilkerson and Arthur Davidson, the parties entered into an agreement on January 7, 1970. Ac-

cording to this agreement, Picnic agreed to pave the areas covered by the easements and, in addition, certain areas on the Davco property with asphaltic concrete. Executed simultaneously with the paving agreement was an agreement providing for the exchange of easements across the parties' respective properties. The easement agreement was specifically mentioned in the recitals of the paving agreement and was incorporated by reference therein. It was further stated that the paving agreement was given as partial consideration for the easement agreement. The easement agreement was also dated January 7, 1970.

The record thus reveals an agreement between two adjacent property owners to mutually develop their respective properties for the benefit of both. Picnic agreed to do certain paving and granted Davco an easement across its property. In return Davco granted Picnic an easement across its property. Picnic thus would obtain ingress and egress to its property from West Dodge Road. Davco would obtain access to additional parking space enabling it to add onto the building on its property.

The first issue confronting us on appeal is whether the agreement was too indefinite and uncertain to be enforceable. The District Court found the agreement indefinite and uncertain specifically in regard to: The nature of the paving material to be used; the depth and thickness of the paving; the foundation work and site preparation work required; and the time within which Picnic was required to perform. The agreement provided that Picnic was to pave the areas covered by the easements in addition to certain areas on Davco's property. Some of the areas to be paved were unimproved, others had concrete paving which was not to be covered. All paving was to be "asphaltic concrete." Additionally, the agreement stated, "All of the said paving (including foundation work and site preparation) shall be done in

conformity with the specifications of the City of Omaha with respect to such pavement.''

It is a fundamental rule that in order to be binding, an agreement must be definite and certain, as to the terms and requirements. It must identify the subject matter and spell out the essential commitments and agreements with respect thereto. See 17 Am. Jur. 2d, Contracts, § 75, pp. 413, 414.

In support of their contention that the District Court was correct in holding the paving agreement unenforceable for lack of definiteness, the defendants cite testimony to the effect that the composition of "asphaltic concrete" can vary, and that the depth of asphalt parking lots can vary. The agreement provided that paving would be done in conformity with the specifications of the City of Omaha with respect to such pavement. However, the defendants point out the City of Omaha has no specifications relating to parking lot construction. The only City of Omaha specifications dealing with asphaltic concrete relate to street construction. The defendants also argue that the terms "foundation work and site preparation" are vague, and that the agreement does provide a time for performance.

We disagree with the District Court's conclusion that the paving agreement failed for want of definiteness and certainty. We believe that despite the ambiguities present in the agreement, it was sufficiently definite to be an enforceable contract.

While the City of Omaha has no specifications for "asphaltic concrete" parking lots, it does have specifications for "asphlatic concrete" street construction. There is nothing in the record to suggest that the specifications given for asphaltic concrete street construction would not be appropriate for the construction of a parking lot, which essentially bears the same burden as a street. The term in the contract relating to compliance with appropriate specifications of the City of Omaha is no doubt one of

those clauses typically placed in a contract, requiring, as a contractual matter, compliance by the parties with the appropriate local government regulations and specifications dealing with the subject matter of the contract, should there be any.

"[T]he subject matter of the agreement must be expressed in such terms that it can be ascertained with reasonable certainty." 17 Am. Jur. 2d, Contracts, § 76, p. 416. "Absolute certainty is not required, however, only reasonable certainty is necessary. A contract is not subject to the objection that it is indefinite so long as the parties can tell when it has been performed, and it is enough if, when that time arrives, there is in existence some standard by which performance can be tested." Id. at 417.

In Henggeler v. Jindra, 191 Neb. 317, 214 N. W. 2d 925 (1974), we stated: "In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be *reasonably fit for the intended purpose*." (Emphasis supplied.)

We believe that this is an appropriate standard by which Picnic's obligation under the agreement could be tested. Picnic was called upon to have certain areas paved with "asphaltic concrete," commonly known as "blacktop." Some of the areas to be covered had concrete paving on them, others were unimproved. The areas to be paved were to be used for parking and related vehicular traffic. Picnic was required to do the necessary site preparation and foundation work, and to lay asphaltic concrete of a type and thickness reasonably suited or adequate for the purposes to which these paved areas were to be put. This minimum requirement of fitness for the intended purpose cures any ambiguity otherwise inherent in the agreement. This standard provides an adequate basis for determining what was required under the contract.

The contract did not state a time for when Picnic's performance was to take place. However, in the absence of a stated time for performance, the law will imply a time of performance within a reasonable time under the circumstances. See, e. g. 1 Corbin, Contracts, § 96, pp. 411, 412; 1 Williston (3d Ed.), Contracts, § 38, pp. 112 to 115.

While we hold the paving agreement sufficiently definite so as to be enforceable, and although it is admitted that Picnic has not done, or caused to have been done, any paving pursuant to the agreement, we do not believe that Davco is entitled to any recovery. In our opinion, the record reveals an intention by the parties to this agreement to abandon it.

"A contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties." 17 Am. Jur. 2d, Contracts, § 494, p. 967. "Ordinarily abandonment of a contract by mutual consent may take place at any stage of the performance by the parties * * *." 17A C. J. S., Contracts, § 387, p. 461.

"The abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is claimed to have resulted. An abandonment of a contract need not be express but may be inferred from the conduct of the parties and the attendant circumstances." 17 Am. Jur. 2d, Contracts, § 484, p. 954.

"The cancellation, abandonment, or rescission of a written contract may not only be written but it may also be oral. Moreover, an implied agreement to rescind a contract may be given effect, and the assent of the parties to rescission may be shown by their acts or conduct, and the surrounding circumstances. Accordingly, in determining whether a rescission took place, the courts look not only to the

language of the parties, but to all the circumstances." 17A C. J. S., Contracts, § 388, pp. 462 to 464.

The parties stipulated to the fact that certain trees and stumps which existed on the real estate still existed at the date of the trial.

The record shows that Picnic abandoned its plans to develop and operate businesses on its property. Picnic conducted no operation on its property, nor did it ever make any use of the easement granted to it across Davco property. Picnic put its property up for sale in 1970, and large signs were placed on the property advertising it for sale. These signs remained on Picnic's property until some time in 1974. As was mentioned earlier, Picnic was dissolved as a corporation by the Secretary of State in 1972.

Davco has used the easement area granted it on Picnic's property only a few times in the years since the agreement was executed for parking. The proposed addition to the building on Davco's property has never been built. Arthur Davidson testified that Davco has never made a decision to proceed with the construction of this addition. He stated that in 1969, a tentative decision was made not to proceed with the building of the addition. However, he testified that there were still plans, at some indefinite date in the future, to construct this addition. No architect, contractor, or financial institution was ever contacted concerning detailed plans or information concerning the construction or financing of the proposed addition. Arthur Davidson testified that he did have some tentative plans drawn by an architect, but no final plans. He also talked to a contractor in 1969 about costs of such an addition. He also talked generally with two financial institutions about financing, the latest conversation being in 1972.

In the fall of 1974, Davco caused a demand to be made on Picnic for performance of the paving agreement. Arthur Davidson testified that at the time the

demand was made he was unaware that Picnic was dissolved or out of business. He stated, however, that he was aware, at the time he made this demand, that Picnic was attempting to sell its property.

In 1974, Picnic, anticipating a sale of its property, asked Davco for a release of the easement granted to Davco across Picnic's property. Don Burden testified that prior to the time the release was requested he had not received any demand from Davco for the performance of the paving agreement. Arthur Davidson denied that the demand for performance was in response to Picnic's request for a release from the easement agreement.

Based upon our review of the record, outlined above, we believe that both parties to this agreement manifested by their conduct their intention to abandon the agreement which was aimed at the mutual development of their adjacent properties.

"Generally rescission must be exercised in toto and is applied to the contract in its entirety with the result that what has been done is wholly undone and no contract provisions remain in force to bind either of the parties." 17A C. J. S., Contracts, § 387, p. 461.

"Where a contract has been rescinded by mutual consent, the parties are, as a general rule, restored to their original rights with relation to the subject matter, and they are entitled to be placed in status quo as far as possible. All rights under the rescinded contract are terminated, and the parties are discharged from their obligations thereunder." 17A C. J. S., Contracts, § 392, pp. 471, 472. See, also, 17 Am. Jur. 2d, Contracts, § 512, p. 994 to 996.

The District Court, in addition to denying the plaintiff's claim for damages, directed the parties to execute appropriate releases of the easements they conveyed. When this is done, each party will be in the same position it was prior to the agreement. We

note that neither party has materially shifted its position as a result of this agreement.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

McCOWN, J., concurring in result.

In my opinion the evidence is clear that the easements and what is referred to in the majority opinion as "the paving agreement" were all integral parts of a single agreement. Although they are contained in three separate instruments, there can be no real doubt of their interdependence. Since no subsequent purchasers of the real estate were involved, the failure to reflect the "paving agreement" in the easement, or to record it, was immaterial.

I am also convinced that "the paving agreement" was not sufficiently definite and certain as to be enforceable. A critical factor is that no time was ever specified for performance of the paving work by Picnic Foods, nor was any time specified within which Davco was to construct its addition. Nevertheless, it is virtually indisputable that Davco's addition was to be built before the paving work was to be done. While the agreement did not require Davco to build, or to build within any particular time, it treated the contemplated addition by Davco as the foundation for Picnic's obligation to pave. Any other interpretation would be unrealistic.

The District Court specifically found the agreement indefinite and uncertain with respect to the nature of the paving material to be used, the depth and thickness of the paving, the foundation and site preparation work required, and the time in which Picnic Foods was required to perform. That finding and determination was correct and the findings, as well as the judgment, of the District Court should have been approved and affirmed.

BOSLAUGH, J., joins in this concurrence.

CLINTON, J., dissenting.

I respectfully dissent. This action, as the majority opinion notes, is at law with jury waived. The judgment of the District Court must therefore be affirmed unless it is clearly wrong. I believe it is and that accordingly the judgment should be reversed. There is no dispute in the evidence on any material fact. Both the District Court and this court have, I believe, in a wholly unprecedented way, misapplied established legal principles.

The lower court found: ". . . that the parties to the easement agreement . . . both have abandoned *the purpose* for which the easements were mutually conveyed and, therefore, the easement should be extinguished *by operation of law.*" (Emphasis supplied.)

This court finds: "The record thus reveals an agreement between two adjacent property owners to mutually develop their respective properties for the benefit of both," and it finds "both parties . . . manifested by their conduct their intention to abandon the agreement which was aimed at the mutual development of their adjacent properties." These findings are without evidentiary support.

The majority opinion is somewhat vague as to rationale, but its findings of abandonment and mutual rescission seem to be bottomed on two findings of fact, viz, (1) Picnic did not do the paving it agreed to do; and (2) neither party erected the building each contemplated; in Davco's case, an addition to its existing building, and in Picnic's case, the construction of a restaurant. The first is simply a breach of contract by one party. As to the second the court, wholly without evidentiary support and by some sort of judicial legerdemain, reads into the transaction an agreement that the grants were conditioned upon each party carrying through with its separate, proposed plans. There is no evidence whatever of any such agreement. The defendant cites no authority which engrafts such a condition as a matter of law

and our research has disclosed no such authority. Davco by testimony denies it has abandoned its plans.

The record establishes only this: The parties, by grant, exchange easements on their respective properties. In addition, Picnic agreed, as part of the consideration for its easement, to pave the portion of its own property covered by the easement as well as part of the Davco property. Although there is no dispute about what each of the parties "proposed" to do in the way of building on its own property, and that they have not done it, there is not one scintilla of evidence supporting the proposition that there was any agreement that such improvements be made, or that the making of such improvements was a part of the consideration for the exchange of the easements and the agreement of Picnic to pave, or that the grants were conditioned in some way. There is not one scintilla of evidence in the record to support the majority opinion's finding that the contract was "rescinded by mutual consent." The instruments by which the easements were granted recite that their "purpose" is to give "ingress" and "egress."

The record establishes that Davco had done everything that it was required to do by the agreement. Its performance was complete. It conveyed the easement. Picnic's performance was partial. It conveyed the easement. It had not performed the balance of the agreement, that is, doing the paving.

In this case this court would enforce a forfeiture of an interest in real estate against a grantee who has fully performed its part of the contract. Then this court goes on to cancel the whole transaction, including the reciprocal deeds of grant. The sole beneficiary of this court's action is the property owner who is in default.

The court here completely misapplies established principles with reference to the abandonment of an

easement. There is no evidence here at all that Davco abandoned the easement. There is no evidence here that Picnic abandoned its easement. The evidence does show that Picnic needed the easement across a corner of the Davco property because that was the only way it could establish access to West Dodge Road. Its purpose in acquiring the easement, as recited in the grant itself, was to gain the needed access. That purpose was wholly accomplished. Davco's purpose was to acquire an easement for a driveway on the Picnic property, the effect of which was to expand its lot and also to give it an exit to the south. The recited purposes of both easements were wholly accomplished. The only part of the agreement which failed was Picnic's refusal to perform its agreement to pave.

The result the trial court reached, and which the majority of this court now reaches, is arrived at on the theory of abandonment, but in legal contemplation there is no evidence of abandonment of the easements.

Abandonment is the voluntary and intentional relinquishment of a right to property. 1 C. J. S., Abandonment, § 1, p. 4. Mere nonuser does not result in abandonment. 1 C. J. S., Abandonment, § 3(2), p. 10. Nonuser of an easement for a period less than 10 years will not of itself work an abandonment of a right. Agnew v. City of Pawnee City, 79 Neb. 603, 113 N. W. 236. Even if the owners of the servient estate maintain obstructions thereon for a period less than the period of limitation, the easement is not lost. Ballinger v. Kinney, 87 Neb. 342, 127 N. W. 239. There was no obstruction placed at all in this case, much less obstruction for the statutory period. An easement may be abandoned only by unequivocal acts showing a clear intention to abandon and terminate the right. Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334; Williams v. Lantz, 123 Neb. 67, 242 N. W. 269; Polyzois v. Resnick, 123 Neb. 663, 243

N. W. 864. The owner of an easement may abandon it by some affirmative act which renders the use of the easement impossible. Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293. Title to real estate is not lost by a mere failure to assert it. Hadley v. Platte Valley Cattle Co., 143 Neb. 482, 10 N. W. 2d 249.

In the case before us, neither party did any act which would evidence an abandonment of the easement which each acquired. After the exchange there was no communication between the parties until shortly before this action was commenced. Then Picnic asked Davco to execute a written surrender of the easement because Picnic wished to sell its property and to do so free of the easement. Davco refused except upon payment of a consideration. Picnic refused to pay consideration. Thereafter Davco demanded performance of the paving agreement by Picnic and this suit ensued. The easements were executed on January 7, 1970. Davco demanded performance on December 20, 1974.

It would appear in this case that the trial court confused "purpose of the easement" with the "proposed" business plans of each of the parties for their respective properties. There appears at 28 C. J. S., Easements, § 54a, p. 718, the following: "An easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." Numerous cases are cited in the accompanying footnote. This may be the principle on which the trial court was relying. An examination of the numerous opinions cited in the footnotes show that none support the result reached in this case. Some, in fact, require the opposite result. See, Kogod v. Cogito, 200 F. 2d 743; Gerbig v. Zumpano, 7 N. Y. 2d 327, 197 N. Y. Supp. 2d 161, 165 N. E. 2d 178. The trial court apparently confused "purposes" with the parties' separate motivations. This court carries the matter

one step further by finding an "agreement" when there is no evidence of such an agreement.

I would reverse the judgment of the District Court and remand for a new trial on the issue of damages.

WHITE, C. THOMAS, J., joins in this dissent.