285 N.W.2d 828 (1979)
204 Neb. 820
TOWN & COUNTRY REALTY OF KEARNEY, INC., a Nebraska Corporation, Appellee,
v.
Richard M. GLIDDEN and Cynthia J. Glidden, Appellants.
No. 42502.
Supreme Court of Nebraska.
December 4, 1979.
*829 J. Marvin Weems, P. C., Law Offices L. W. Cronk, Ord, of counsel, J. Marvin Weems and Curtis A. Sikyta, Ord, for appellants.
Ross, Schroeder & Fritzler, Kearney, for appellee.
Heard before BOSLAUGH, CLINTON, and McCOWN, JJ., and L. W. KELLY, Jr., and COLWELL, District Judges.
COLWELL, District Judge.
Defendants, Richard M. Glidden and Cynthia J. Glidden, appeal from a judgment granting plaintiff a realtor's commission. Defendants sold their house themselves befor the listing agreement expired.
The issues were first litigated in the county court of Buffalo County, Nebraska, upon plaintiff's petition and defendants' answer and cross-petition for damages. Defendants alleged unfair acts on the part of the plaintiff under section 59-1602, R.R.S. 1943. The county court dismissed both the petition and cross-petition. Both parties appealed to the District Court, pursuant to the provisions of section 24-541, R.R.S. 1943, where that court, on September 14, 1978, entered a $2,541 judgment in favor of plaintiff and dismissed defendants' cross-petition. Defendants appeal to this court, claiming error as follows: (1) Plaintiff breached its duty as a fiduciary; (2) the sale made by defendants was not within the terms of the listing contract; (3) the listing contract was mutually rescinded; and (4) plaintiff's acts and practices were deceptive and unfair, in violation of section 59-1602, R.R.S. 1943.
At the time the listing contract was executed, Richard was completing his undergraduate studies at Kearney State College and Cynthia had a degree in education and two years teaching experience.
There is conflict in the evidence on all of the issues presented; however, as to the following facts there is little dispute. In September 1976, defendants bought their house in Kearney, Nebraska, for $41,000. Kay Downing, a salesperson for plaintiff, negotiated this sale. In the spring of 1977, defendants were intending to move from Kearney. They made an effort to sell the house on their own, originally asking $45,500. This asking price was later reduced, but they were unsuccessful in making a sale, and subsequent contacts were made between plaintiff and defendants. Defendants informed plaintiff that the minimum selling price would have to be $44,500, since they had to net $42,000 from the sale in order to break even. A written listing contract was executed by defendants on July 30, 1977, employing plaintiff as their agent to sell their house for $46,000. Kay Downing was to be the salesperson. It was an exclusive contract, expiring October 30, 1977, reciting, in part: "I (We) agree to pay you for professional services a cash fee of 6% of the gross sale price, * * * to be payable on the happening of any one or more of the following events, to wit: If a sale is made, or a purchaser found, who is ready, willing and able to purchase the property before the expiration of this listing, by you, myself, or any other person, at the above price and terms or for any other price and terms I (we) may agree to accept, *830 or if this agreement is revoked or violated by me, * * * or if within 90 [days] after the expiration of this listing I (we) make a sale of said premises to anyone due to your efforts or advertising done under this listing." Within a few days plaintiff distributed the listing among other cooperating brokers in Kearney, placed newspaper advertisements, and conducted an open house for two hours on August 21, 1977, which was attended by Myron and Pamela Hensel. On July 29, 1977, defendants bought a house in Ord, Nebraska, paying $500 down. On August 23, 1977, the Hensels contacted defendants relative to renting the Kearney house, and defendants inquired as to the Hensels' interest in buying the property. The next day Cynthia arranged with Kay for the removal of the agent's sign and lockbox from the premises, on the representation by Cynthia that they wanted to rent the house. The cooperating realtors were notified that the house could no longer be shown. Thereafter, on August 24, the Hensels again contacted defendants and, after brief negotiations, purchased the house on August 26, 1977, for $42,000. Defendants' warranty deed in favor of the Hensels was recorded October 19, 1977.
It is the obligation of the District Court upon an appeal de novo to reach an independent conclusion without reference to the decision of the county court, with the caveat that where evidence is in irreconcilable conflict, the District Court should consider the lower court's opportunity to observe the witnesses and their manner of testifying. Phillippe v. Barbera, 195 Neb. 727, 240 N.W.2d 50.
The review in this court of a law action is not de novo. A judgment of the District Court will not be set aside by this court on appeal unless it is clearly wrong and it is not supported by the evidence. Stitt Constr. Co. v. Canine's Cupid, Inc., 199 Neb. 400, 259 N.W.2d 29.
Defendants in their answer allege fraud and misrepresentation by plaintiff through its agents in influencing defendants to list their house for $46,000, claiming that this price was excessive and unrealistic.
There is no merit to this defense. The listing price was openly discussed between the parties, defendants concurred in that figure, and shortly before signing the contract defendants were asking only $500 less.
Defendants' answer also claims that plaintiff orally agreed that they could sell the house privately at any time without paying a commission, which condition was not in the executed listing. The evidence on this issue is in conflict, with only defendants' statements to support their claim.
The key issue here is whether or not the listing contract was mutually rescinded.
"The rescission of a contract by the parties as much requires the meeting of the minds as does the making of the contract." Utilities Ins. Co. v. Stuart, 134 Neb. 413, 278 N.W. 827. See, also, Davco Realty Co. v. Picnic Foods, Inc., 198 Neb. 193, 252 N.W.2d 142; 17 Am.Jur.2d, Contracts, § 490, p. 962.
"Though an agency to sell real estate may be revoked at any time before the sale, such revocation must be in good faith, and will not obtain to appropriate the broker's services without compensation." Dunn v. Snell, 124 Neb. 560, 247 N.W. 428. See, also, Annotation, 69 A.L.R.3d 1270; Annotation, 88 A.L.R. 716.
From 17 Am.Jur.2d, Contracts, § 492, p. 964, these rules are applicable: "* * * as a general rule * * * the parties to a written contract may rescind or cancel it orally, although evidence of rescission of a written contract by a subsequent parol agreement must be clear, positive, and above suspicion, * * *. An oral agreement rescinding a written contract must generally have the same elements of mutual consent and consideration as are necessary for the formation of other informal contracts." Section 494, p. 967, states: "A contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties."
*831 In summary, defendants' evidence was that when Mr. Hensel contacted them on August 23rd he said that he would not discuss purchasing the home until defendants' listing contract with the plaintiff had been "nulled," since Mrs. Hensel was a licensed real estate salesperson; he told Cynthia to have the listing "nulled" and not "voided." The next day Cynthia went to plaintiff's office and talked to Kay, advising her that they were renting the house, and "I told her that we had found someone who would rent it if it wasn't being shown and if it wasn't going to be shown, we wanted the contract null." (Emphasis supplied.) Cynthia understood that Kay would remove the contract from the file. Significant here is the direct testimony of Kay: "Well, then I do recall her saying `is there anything else we need to do' and I said no. I guess I just didn't think about it at all. They told me they wanted to rent it and I really didn't worry about anything other than that. And then I did take the sign off and the lock-box off." Kay also testified: "Q. Did you make any inquiry as to whether you would have a chance to list it in the future again at that time? A. I don't remember that I did. I may have. According to him they were going to rent it and I assumed or from what they said, they would rent it and possibly sell it again in the spring and maybe I did say we'd certainly like to have another chance at listing it." Defendants concede the listing agreement permitted them to rent the house during its term; further, that they planned to sell the house and not rent it, except for a short term.
Briefly, plaintiff's evidence was that defendants discussed with Kay the possibility of renting the house and Kay offered to help them rent it; that with a renter in the house it could be sold, but it would be more difficult to sell.
Defendants were pressed for time and funds to move to Ord and complete the purchase of a house there. They were aware of plaintiff's right to a commission under the terms of the listing agreement in the event they sold the house privately, and upon the suggestion of Myron Hensel they made an effort to protect themselves from such an obligation. It is clear defendants revoked plaintiff's authority to sell the house by their sale, leaving the fact question of rescission for the trial court. From a full review of the record the trial court could find that there was no mutual rescission of the contract, either express, implied, or by parol; that the plaintiff acted in good faith, with reasonable care, skill, and diligence, as defendants' agent; that it performed its required fiduciary duties, including advertising, distribution of listing information, an open house, and showing the premises; and that defendants owed plaintiff the agreed commission.
Defendants suggest that the District Court failed to consider the opportunity of the county judge to observe the witnesses. There being nothing in the record to the contrary, we presume that the District Court did do so, and fully complied with the caveat of Phillippe v. Barbera, 195 Neb. 727, 240 N.W.2d 50.
Defendants argue that the assessment of $877.88 in costs against the defendants was unfair, burdensome, and exorbitant. These fees include transcripts and court fees of $354.88, and deposition fees of $520. We cannot say that the District Court was wrong in the assessment of the costs.
It is not necessary to further discuss defendants' claim that the acts of plaintiff were in violation of section 59-1602, R.R.S. 1943. The dismissal of defendants' cross-petition was within the evidence and was correct.
The judgment of the District Court in favor of plaintiff was supported by competent evidence and it should be affirmed.
AFFIRMED.